Ann **MAES** and the Colorado Department of Social Services, Plaintiffs–Appellants,

v.

**LAKEVIEW ASSOCIATES, LTD.,** a Colorado limited partnership; **Bijou Management Company; and James Young,** Individually, Defendants–Appellees.

No. 93CA1091.

Colorado Court of Appeals,
Div. I.

July 28, 1994.

Rehearing Denied Sept. 8, 1994.

Certiorari Granted April 10, 1995.

J. Gregory Walta, P.C., Celeste L. Gerber, J. Gregory Walta, Colorado Springs, for plaintiffs-appellants.

Carla McCord Albers & Associates, Gregory R. Werner, Colorado Springs, for defendants-appellees.

Opinion by Judge ROY.

In this premises liability action, plaintiffs, Ann Maes and the Colorado Department of Social Services, appeal a judgment entered on a jury verdict in favor of defendants, Lakeview Associates, Ltd., Bijou Management Company, and James Young. Plaintiffs also appeal a post-trial order relating to costs of the record on appeal. We reverse the judgment and the post-trial order and remand for further proceedings.

Maes rented and lived in an apartment facility owned or managed by defendants. In 1991, she was injured when she slipped and fell on some ice in the apartment parking lot. She then commenced these proceedings urging that she was an "invitee" on the premises.

Defendants sought a pre-trial ruling establishing the status of Maes as a "licensee" at the time of the accident. The trial court, after a hearing and argument, concluded that Maes was a "licensee," and trial to a jury was conducted on that basis which resulted in a verdict for defendants.

I.

As a preliminary matter, contrary to defendants' argument, we conclude that plaintiffs adequately preserved the licensee-invitee issue for review. A party is not required to prepare and submit jury instructions which are in conflict with a pre-trial ruling or otherwise continuously object during trial to preserve a pre-trial ruling for appeal. *See Albright v. District Court,* 150 Colo. 487, 375 P.2d 685 (1962).

II.

Plaintiffs contend that the trial court erred in its pre-trial ruling that Maes was a "licensee." We agree.

In 1971, our supreme court abandoned the common law categories with respect to landowner liability. *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971).

In 1986, the General Assembly adopted a statute which reinstituted a category system. Colo.Sess.Laws 1986, ch. 109 at 683. This statute was declared unconstitutional in *Gallegos v. Phipps,* 779 P.2d 856 (Colo.1989) because it established a standard of care for a "licensee" that was higher than that for an "invitee."

In response to *Gallegos,* the General Assembly amended the law effective April 20, 1990, reordered the standards of care to comply with *Gallegos,* and stated that it was not reinstating the common law status categories abandoned in *Radovich. See* § 13-21-115(1.5), C.R.S. (1993 Cum.Supp.); Colo. Sess.Laws 1990, ch. 107 at 867.

The present statute establishes three standards of care depending on the relationship between the landowner and the person injured on the premises. Section 13-21-115, C.R.S. (1987 Repl.Vol. 6A). The highest standard of care is owed the "invitee," a lesser is owed the "licensee," and a yet lesser is owed the trespasser. We need only consider the standards for "invitee" and "licensee."

■ As relevant here, an "invitee" is one who enters or remains on the land of another to transact business in which the parties are mutually interested. Section 13-21-115(5)(c), C.R.S. (1993 Cum.Supp.). And, a person having such status is permitted to recover damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known. Section 13-21-115(3)(c), C.R.S. (1993 Cum. Supp.).

■ A "licensee" is one who enters or remains on the land of another for the licensee's own convenience or to advance his own interests, pursuant to the landowner's permission or consent. Section 13-21-115(5)(b), C.R.S. (1993 Cum.Supp.). A "licensee" may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner actually knew. A licensee may also recover for the landowner's unreasonable failure to warn of dangers not created by the landowner which are not ordinarily present on property of the type involved and of which the landowner actually knew. Section 13-21-115(3)(b), C.R.S. (1993 Cum.Supp.).

We conclude that Maes was an "invitee." Here, as in all landlord-tenant relationships, the "landowner" is in the business of renting property. The tenant is a customer of the landlord in a continuing business relationship that is mutually beneficial.

We reject defendants' contention that this relationship is only beneficial to the tenant, Maes. While the definition of "invitee" calls immediately to mind a retail store customer making a short visit to purchase merchandise or services, the definition is broad enough to include a tenant.

Prior to *Radovich,* and before the enactment of the statute, a tenant was an "invitee," or equivalent. *Palmer Park Gardens, Inc. v. Potter,* 162 Colo. 178, 425 P.2d 268 (1967); *Kopke v. AAA Warehouse Corp.,* 30 Colo.App. 470, 494 P.2d 1307 (1972) (applying "Connecticut" rule to the duty of a landlord over his tenant in removing natural accumulations of snow and ice); *see also* Annotation, *Landlord's Liability to Tenant or Tenant's Invitees for Ice and Snow in Areas or Passageways Used in Common by Tenants,* 49 A.L.R.3d 383 (1973). The fact that the General Assembly did not intend to reestablish the common law categories does not mandate a different result. The creation of newly defined categories merely requires that the relationship of landlord-tenant must be examined under the new definitions.

We are fortified in our conclusion by the legislative history. While the landlord-tenant relationship was not addressed in this context, the legislative hearings on the 1990 legislation demonstrate that the General Assembly intended the "invitee" status to apply in circumstances in which the "landowner" receives a financial benefit from the relationship. *See* Tape Recording of Testimony before House Committee on State Affairs concerning H.B. 1107 (February 8, 1990, 57th

General Assembly); Tape Recording of Testimony before Senate Committee on Agriculture, Natural Resources and Energy concerning H.B. 1107 (March 6, 1990, 57th General Assembly).

Defendants argue that Maes was on the property for her own benefit because she was leaving the apartment complex for personal reasons and chose to cross the parking lot because it was the shortest route to a bus stop. Defendants urge that the status of a tenant changes with the particular activity engaged in by the tenant at the time of the injury. However, if we were to accept this concept of a floating status relative to the landlord-tenant relationship, it would expand, complicate, and destabilize premises liability litigation by creating an additional layer of litigable issues, a result contrary to a manifest legislative intent which is to enhance stability and predictability. Furthermore, we are unaware of any authority in support of this unique theory, and we decline to adopt it.

Relying on § 13–21–115(1.5)(e), C.R.S. (1993 Cum.Supp.) and *Palmer Park Gardens, Inc. v. Potter, supra,* defendants argue that the General Assembly intended to reduce the status of a tenant to "licensee" because the statute specifically designates a social guest as a "licensee" and because, prior to *Radovich,* the guest of a tenant was an "invitee." We are not persuaded.

In our view, the business relationship between the landlord and tenant is an adequate basis for distinguishing that relationship from that of a landowner and the landowner's social guest or from that of a landowner and the tenant's social guest.

Therefore, we hold that the trial court erred in ruling that Maes was a "licensee." Accordingly, the judgment for defendants cannot stand, and a new trial is required.

### III.

Plaintiffs also contend that the trial court erred in requiring them to pay for portions of the appellate record designated by defendants. We agree.

The rule provides that the party who designates a part of the appellate record shall pay the costs of preparing it except that "upon a showing by any party that such allocation of costs would be inequitable," the court may allocate the costs in some other way. C.A.R. 10(b).

Here, plaintiffs did not designate the trial transcript, exhibits, depositions, introduced at trial, or all of the jury instructions. On defendants' motion, the trial court ordered plaintiffs to designate and pay for these additional portions of the record.

Prior to the post-trial order, the sole issue on appeal was whether Maes was an "invitee" or "licensee." The status of Maes as a tenant in the defendants' apartment complex is not, and was not, controverted. All of the evidence necessary to the resolution of the issue of Maes' status was admitted in the pleadings or stipulated in the portions of the record originally designated by plaintiffs.

Therefore, the order requiring the plaintiffs to pay the cost of the preparation and transmittal of those portions of the record on appeal designated by the defendants constitutes error and those costs should be assessed and paid by defendants.

The judgment and order are reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

METZGER and RULAND, JJ., concur.