LAKEVIEW ASSOCIATES, LTD., a Colorado limited partnership; Bijou Management Company; and James Young, individually, Petitioners,

v.

Ann MAES and the Colorado Department of Social Services, Respondents.

No. 94SC595.

Supreme Court of Colorado,
En Banc.

Nov. 28, 1995.

Anderson, Campbell and Laugesen, P.C., Richard W. Laugesen, Denver, for defendants-petitioners.

J. Gregory Walta, P.C., Celeste L. Crizer, Colorado Springs, for respondents-plaintiffs.

Justice KIRSHBAUM delivered the Opinion of the Court.

In *Maes v. Lakeview Associates, Ltd.*, 892 P.2d 375 (Colo.App.1994), the court of appeals determined that plaintiff-respondent Ann Maes, a tenant at an apartment complex owned by defendant-petitioner Lakeview Associates, Ltd., was an invitee and not a licensee for purposes of Colorado's landowner liability statute, section 13–21–115, 6A C.R.S. (1987 & 1995 Supp.) (hereafter "the Act"), at the time she sustained injuries in an accident.[1] Having granted certiorari to review the court of appeals' decision, we affirm.

### I

The material facts are undisputed. On December 14, 1991, Maes was a tenant at Lakeview Apartments, an apartment complex for elderly persons located in Colorado Springs, Colorado. That morning, Maes left her apartment to catch a city bus at a bus stop located to the north of the complex. She elected to use the north door of the building rather than the main door in order to take a shortcut across the complex parking lot to reach the bus stop. While walking across the parking lot Maes slipped and fell on a patch of ice and sustained temporary and permanent injuries. Although Maes did not own a car, she often walked across the parking lot to reach the bus stop.

Maes and plaintiff-respondent Colorado Department of Social Services[2] (hereafter "the Department") subsequently filed this civil action against the defendants pursuant to the Act. Prior to trial, defendants filed a motion pursuant to section 13–21–115(4), 6A C.R.S. (1987 & 1995 Supp.), for a determination of whether Maes was an "invitee" or a "licensee" as defined by the Act. After conducting a hearing on the motion, the trial court determined that Maes was a licensee for purposes of the Act because she walked across the parking lot with the permission and consent of the defendants for her own convenience. At the conclusion of the evidence, the jury was instructed on the duty of care owed by owners and managers of property to licensees. The jury returned a verdict in favor of the defendants and the trial court entered judgment for the defendants on the basis of that verdict.

Maes and the Department appealed, and the court of appeals reversed and remanded the case for a new trial. *Maes v. Lakeview Assocs., Ltd.*, 892 P.2d 375 (Colo.App.1994). The court concluded that Maes was an invitee and not a licensee as those terms are defined by the Act, reasoning that the landlord-tenant relationship between Maes and the defendants constituted a business relationship and that Maes was therefore on the premises for the mutual benefit of herself and the defendants. *Maes*, 892 P.2d at 377–78.

### II

At common law, a licensee was defined as a person who goes upon the property of

---

1. Defendant-petitioner Bijou Management Company was the manager of the complex. Defendant-petitioner James Young was the general partner of Lakeview Associates, Ltd., and was the sole owner of defendant-petitioner Bijou Management Company. The three defendant-petitioners will hereafter be referred to collectively as "the defendants."

2. The Department paid Maes' medical expenses arising out of the injuries she sustained in the fall and seeks to be subrogated to the rights of Maes as against the defendants in the event judgment is ultimately entered in favor of Maes.

another for the person's own convenience or to advance the person's own interests, with the permission or consent of the landowner. *Husser v. School Dist. No. 11,* 159 Colo. 590, 594–95, 413 P.2d 906, 909 (1966). In contrast, an invitee was defined as a person who enters or occupies property of another for the purpose of transacting business with the landowner. *Id.* at 594, 413 P.2d at 909; *Mathias v. Denver Union Terminal Ry.,* 137 Colo. 224, 228, 323 P.2d 624, 626 (1958); *Hooker v. Routt Realty Co.,* 102 Colo. 8, 11, 76 P.2d 431, 432–33 (1938). Thus, an invitee's presence on land owned by another was regarded as serving the mutual purposes of the invitee and the landowner. *Mathias,* 137 Colo. at 228, 323 P.2d at 626; *see Husser,* 159 Colo. at 594, 413 P.2d at 909. A landowner had a duty to refrain from wilfully or wantonly injuring a licensee. *Lunt v. Post Printing and Publishing Co.,* 48 Colo. 316, 329–30, 110 P. 203, 207 (1910); *see Mathias,* 137 Colo. at 229, 323 P.2d at 627. However, a landowner was charged with the duty of protecting an invitee from known dangers or those conditions that the landowner might have discovered in the exercise of reasonable care. *Husser,* 159 Colo. at 594, 413 P.2d at 909; *see Nettrour v. J.C. Penney Co.,* 146 Colo. 150, 154–55, 360 P.2d 964, 966 (1961).

In *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 548, 489 P.2d 308, 314 (1971), this court determined that the common-law status of a person entering the property of another no longer controlled the standard of care applicable to the conduct of landowners. We determined that landowners had a duty to manage their property in a reasonable manner in view of the likelihood or foreseeability of injury to persons on the property and that the status of the entrant was only one factor to be considered in determining the liability of a landowner for injuries allegedly sustained by persons on the landowner's property as a result of the landowner's negligent conduct. *Id.* at 548, 489 P.2d at 314–15. This standard for determining the scope of a landowner's duty of care to persons entering or occupying the landowner's property was extended to the landlord-tenant relationship by the Colorado Court of Appeals in *Kopke v. AAA Warehouse Corp.,* 30 Colo.App. 470, 473–74, 494 P.2d 1307, 1309 (1972).

In 1986 the General Assembly adopted the landowner liability statute, section 13–21–115, 6A C.R.S. (1987) (hereafter "the 1986 Act") in an effort to revive the common-law categories of invitee, licensee, and trespasser as they existed prior to *Radovich. Gallegos v. Phipps,* 779 P.2d 856, 861 & n. 6 (Colo. 1989). While the 1986 Act delineated three separate categories of entrants onto the land of another along with a separate standard of care for each type of entrant, the 1986 Act did not explicitly label those categories "trespasser," "licensee" and "invitee." *See* § 13–21–115(3)(a), (b), (c), 6A C.R.S. (1987). With respect to a landowner's duty of care to persons traditionally described as "licensees," the 1986 Act contained the following pertinent provision:

(b) If the plaintiff entered or remained upon such property with the consent of the landowner, but the entry was for the plaintiff's own purposes and not the purposes of the landowner, the plaintiff may recover only for damages caused by the landowner's deliberate failure to exercise reasonable care in the conduct of the landowner's active operations upon the property or by the landowner's failure to warn of dangers which are not ordinarily present on property of the type involved and of which the landowner actually knew.

§ 13–21–115(3)(b), 6A C.R.S. (1987). With respect to a landowner's duty of care toward those persons traditionally described as invitees, the 1986 Act contained the following pertinent provision:

(c) If the landowner has expressly or impliedly invited the plaintiff onto the real property for the purposes of the landowner, the plaintiff may recover for damages caused by the landowner's deliberate failure to exercise reasonable care to protect against dangers which are not ordinarily present. on property of the type involved and of which he actually knew.

§ 13–21–115(3)(c), 6A C.R.S. (1987). In *Gallegos v. Phipps,* 779 P.2d 856, 862–63 (Colo.1989), this court concluded that the 1986 Act violated federal and state constitutional guarantees of equal protection of the laws because the provisions of the Act delin-

eating a higher standard of care for licensees than for invitees were not rationally related to the legitimate governmental objective of reinstating the traditional common-law standards. In response to *Gallegos,* the General Assembly in 1990 adopted the Act by amending the 1986 Act. *See* Ch. 107, sec. 1, § 13–21–115, 1990 Colo.Sess.Laws 867. As amended, the Act defines an invitee as "a person who enters or remains on the land of another to transact business in which the parties are mutually interested." § 13–21–115(5)(c), 6A C.R.S. (1995 Supp.). The Act defines a licensee as "a person who enters or remains on the land of another for the licensee's own convenience or to advance his own interests, pursuant to the landowner's permission or consent," and includes a social guest. § 13–21–115(5)(b), 6A C.R.S. (1995 Supp.).[3] With respect to the scope of a landowner's duty of care to a licensee, the Act contains the following provisions:

(b) A licensee may recover only for damages caused:

(I) By the landowner's unreasonable failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner actually knew; or

(II) By the landowner's unreasonable failure to warn of dangers not created by the landowner which are not ordinarily present on property of the type involved and of which the landowner actually knew.

§ 13–21–115(3)(b)(I), (b)(II), 6A C.R.S. (1995 Supp.). The Act contains the following provisions with respect to a landowner's duty of care to an invitee:

(c)(I) Except as otherwise provided in subparagraph (II) of this paragraph (c), an invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known.

(II) If the landowner's real property is classified for property tax purposes as agricultural land or vacant land, an invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew.

(3.5) It is the intent of the general assembly in enacting the provisions of subsection (3) of this section that the circumstances under which a licensee may recover include all of the circumstances under which a trespasser could recover and that the circumstances under which an invitee may recover include all of the circumstances under which a trespasser or a licensee could recover.

§ 13–21–115(3)(c)(I), (c)(II), and (3.5), 6A C.R.S. (1995 Supp.). In addition, the Act contains the following statement concerning our decision in *Radovich:*

[T]he general assembly recognizes that by amending this section it is not reinstating the common law status categories as they existed immediately prior to *Mile Hi [High] Fence v. Radovich,* 175 Colo. 537, 489 P.2d 308 (1971) but that its purpose is to protect landowners from liability in some circumstances when they were not protected at common law and to define the instances when liability will be imposed in the manner most consistent with the policies set forth in [this Act].[4]

§ 13–21–115(1.5)(e), 6A C.R.S. (1995 Supp.).

The Act further provides that the determination of whether a person is an invitee or a licensee for purposes of ascertaining the appropriate duty of care of a landowner in a particular case is a preliminary determination to be made by the trial court. § 13–21–115(4), 6A C.R.S. (1987 & 1995 Supp.); *see Bath Excavating & Constr. Co. v. Wills,* 847 P.2d 1141, 1147 (Colo.1993) (scope of duty owed to particular plaintiff is question of law to be resolved by the court). When, as in this case, the controlling facts are un-

---

**3.** Section 13–21–115(5)(a) of the Act defines a trespasser as "a person who enters or remains on the land of another without the landowner's consent." Section 13–21–115(3)(a) of the Act provides that a trespasser "may recover only for damages willfully or deliberately caused by the landowner."

**4.** Despite this statement, the definitions of invitee and licensee provided in the Act appear to be identical to the common-law definitions of such persons as they existed prior to our decision in *Radovich.*

disputed, the legal effect of those facts constitutes a question of law. *Frank C. Klein & Co. v. Colorado Compensation Ins. Auth.,* 859 P.2d 323, 328 (Colo.App.1993). An appellate court is not bound by conclusions of law reached by lower courts. *Evans v. Romer,* 854 P.2d 1270, 1274–75 (Colo.), *cert. denied,* —— U.S. ——, 114 S.Ct. 419, 126 L.Ed.2d 365 (1993). We therefore independently review the question of whether Maes, as a tenant, was an invitee or a licensee for purposes of the Act.[5]

### III

■ In discerning the meaning or scope of a statutory term, our goal is to effectuate the intent giving rise to the legislation. *Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049, 1053 (Colo.1995); *see People v. San Emerterio,* 839 P.2d 1161, 1164 (Colo.1992). In so doing, we first examine the language of the statute itself to determine the legislative intent. *PDM Molding, Inc. v. Stanberg,* 898 P.2d 542, 545 (Colo.1995); *Resolution Trust Corp.,* 898 P.2d at 1054. If the statutory language is unambiguous, it is unnecessary to resort to interpretive rules of statutory construction. *Resolution Trust Corp.,* 898 P.2d at 1054; *Martin v. Montezuma–Cortez Sch. Dist. RE–1,* 841 P.2d 237, 246 (Colo. 1992); *see* § 2–4–203, 1B C.R.S. (1980) (aids in construction of ambiguous statutes).

Section 13–21–115(5)(b), 6A C.R.S. (1995 Supp.), defines a licensee as a person who enters or remains on the property of another "for his own convenience or to advance his own interests." Section 13–21–115(5)(c), 6A C.R.S. (1995 Supp.), defines an invitee as a person who enters or remains on the property of another "to transact business in which the parties are mutually interested." For purposes of the Act, the distinction between an invitee and a licensee therefore depends on the nature of the relationship between the landowner and the person who enters or remains on the landowner's property.

■ An apartment lease represents more than a unilateral obligation on the part of the tenant to pay rent. It reflects an agreement mutually obligating the tenant and the landlord. Milton R. Friedman, *Friedman on Leases* § 1.1 (3d ed.1990); *see Schneiker v. Gordon,* 732 P.2d 603, 606, 608 (Colo.1987) (lease is both contract and conveyance). A lease "contemplates a continuous flow of services from landlord to tenant [including] ... access through space not under tenant's control." Friedman, *supra,* § 1.1. A tenant of an apartment building enjoys a general right to use common areas of the building whether or not this right is explicitly mentioned in the lease, including a right to use such areas to enter and exit the leased apartment. *Id.* § 3.2. Similarly, a tenant in an apartment complex has a right to use the common areas of the complex to enter and exit the tenant's leased premises.

■ In this case, the lease between Maes and Lakeview Associates, Ltd. established the conditions under which the lessor transferred the use of its property to the lessee and defined the mutual rights and obligations of both parties during the term of the lease. Those conditions include the agreement of Maes to make periodic payments of rent and to provide continuing services for the benefit of Lakeview Associates, Ltd.[6] Those conditions also include the agreement of Lakeview Associates, Ltd. to provide certain continuing services for the benefit of Maes.[7] The lease thus benefitted both parties.

The defendants were in the business of renting, managing, and maintaining apartment complexes. Maes was in effect a pa-

---

5. The parties do not contend that Maes was a trespasser or that the Act is not applicable to the landlord-tenant relationship.

6. The lease requires the tenant to perform such acts as removing garbage and waste from the unit, keeping the unit clean, giving the landlord prompt notice of certain defects, and refraining from certain conduct in the absence of prior permission from the landlord.

7. With respect to common areas of the complex, the lease contains the following provisions:

> 10. Maintenance:
> a. The Landlord agrees to:
> (1) regularly clean all common areas of the project;
> (2) maintain the common areas in a safe condition;
> ....
> (8) maintain grounds and shrubs.

tron of the defendants' business. In exchange for her payment of rent in the amount of $123.00 per month, Maes was not only afforded possession of an apartment in the complex owned by Lakeview Associates, Ltd. but was also implicitly authorized to utilize common areas of the complex.[8] Lakeview Associates, Ltd. agreed to provide Maes with the use of her apartment and, implicitly, the common areas of the complex and to provide other continuing services to Maes. Under these circumstances, we conclude that Maes was an invitee and not a licensee for purposes of the Act.[9]

The defendants argue that Maes, who did not own a car, crossed the parking lot purely for her own convenience and not for the benefit of the landlord and therefore was a licensee for purposes of the Act at the time the accident occurred. This contention is not persuasive.

While a person's status as an invitee, licensee, or trespasser may sometimes be determined on the basis of circumstances surrounding a single event, in this case Maes' status with respect to her use of the common property owned by Lakeview Associates, Ltd., was established by the lease. The lease contemplates numerous events occurring over the term of the lease, including the use of common areas on the premises for entrance and egress to and from her apartment.

Although Maes crossed the parking lot because it offered a more convenient route to the bus stop, she was entitled by implication to use the parking lot and all other common areas of the complex in exchange for the payment of rent. She remained an invitee when she crossed the parking lot because she had paid the defendants for use of the parking lot which remained under the defendants' control.

The defendants cite two decisions of this court in support of their theory that a person's status as licensee or invitee may change during the person's presence on the landowner's property. In *Roessler v. O'Brien,* 119 Colo. 222, 201 P.2d 901 (1949), the plaintiff, a guest of a tenant in an apartment building, was injured when he exited the building through a fire escape after being warned not to do so because of the dangerous condition of the fire escape. We held that the plaintiff, as the guest of a tenant, was initially an invitee, but that when the plaintiff "departed from the usual course traveled in entering or leaving the apartment" he became either a licensee or a trespasser. *Roessler,* 119 Colo. at 228, 201 P.2d at 904. In *Mathias v. Denver Union Terminal Ry.,* 137 Colo. 224, 323 P.2d 624 (1958), a photographer seeking a better angle from which to photograph certain passengers as they disembarked from a train at a train station crawled onto a glass canopy and was injured when he fell through the canopy. We concluded that the plaintiff was an invitee while present in the areas of the station open to the public but that he became a licensee when he crawled onto the glass roof, an area "not intended for his use." *Mathias,* 137 Colo. at 229, 323 P.2d at 627.

*Roessler* and *Mathias* do recognize that a person who initially occupies property of another as an invitee may, as the result of that person's conduct, assume the status of a licensee. However, in both *Roessler* and *Mat-*

---

8. A parking lot has been considered to constitute a common area of a premises. *See, e.g., Palmer Park Gardens, Inc. v. Potter,* 162 Colo. 178, 183, 425 P.2d 268, 271 (1967); *Cooley v. Paraho Dev. Corp.,* 851 P.2d 207, 209 (Colo.App.1992), aff'd sub nom. *General Elec. Co. v. Niemet,* 866 P.2d 1361 (Colo.1994); *Kopke v. AAA Warehouse Corp.,* 30 Colo.App. 470, 473, 494 P.2d 1307, 1308 (1972).

9. Other courts have concluded that a tenant is an invitee with regard to common areas, reasoning that those areas remain under a landlord's control and that tenants and their guests may use such areas pursuant to the landlord's express or implied invitation. *See, e.g., LaFaive v. DiLoreto,* 2 Conn.App. 58, 476 A.2d 626 (1984); *Macke Laundry Serv. Co. v. Weber,* 267 Md. 426, 298 A.2d 27 (1972); *Lucas v. Mississippi Housing Auth.,* 441 So.2d 101 (Miss.1983); *Rennick v. Hoover,* 186 Mont. 167, 606 P.2d 1079 (1980) (construing *Lake v. Emigh,* 121 Mont. 87, 190 P.2d 550 (1948)); *Colonial Natural Gas Co. v. Sayers,* 222 Va. 781, 284 S.E.2d 599 (1981).

At least one court has declined to apply the common-law status categories to the relationship between landlord and tenant, finding that the standard of care owed to a tenant by a landlord is higher than that owed by a landowner to an invitee. *Bostian v. Jewell,* 254 Iowa 1289, 121 N.W.2d 141 (1963).

*hias* the plaintiffs were injured after electing to go upon areas of property outside the boundaries of the property onto which they initially had been invited. These decisions are distinguishable from the circumstances of this case. Maes entered an area of the apartment complex she was implicitly entitled to occupy pursuant to her lease with Lakeview Associates, Ltd. Although Maes crossed the parking lot for her own convenience, she was entitled to exit the building through the door facing the parking lot and to use the parking lot for her own convenience regardless of whether she owned or used an automobile. The lease did not limit Maes' use of the parking lot or of the door facing the parking lot and did not in general confine the use of the parking lot to tenants who owned or parked cars. *See Robinson v. Belmont–Buckingham Holding Co.,* 94 Colo. 534, 538, 31 P.2d 918, 920 (1934) (where apartment building contained two exits, tenant was free to use either). Under the circumstances of this case, we conclude, as did the court of appeals, that at the time she was injured, Maes was an invitee pursuant to section 13–21–115(5)(c), 6A C.R.S. (1995 Supp.).[10]

## IV

For the foregoing reasons, we affirm the judgment of the court of appeals.

---

**10.** Our conclusion that a tenant is an invitee extends only to common areas under the control of a landlord and does not refer to leases which transfer exclusive possession and control of a premises to a tenant. *See, e.g., Shump v. First Continental–Robinwood Assocs.,* 71 Ohio St.3d 414, 644 N.E.2d 291, 294–96 (1994) (common law classifications did not determine legal duty owed tenant by landlord, where tenant and tenant's guest were killed by fire in leased townhome under tenant's exclusive control); *Bellemare v. Gateway Builders, Inc.,* 420 N.W.2d 733, 740–41 (N.D.1988) (holding that tenant of nonresidential agricultural property had greater opportunity to discover defects due to his exclusive possession of the premises and was therefore not subject to common-law classifications, but noting possibility that modern apartment leases were distinguishable because of their contractual nature); *Knox v. Gray,* 289 Ark. 507, 712 S.W.2d

914, 915 (1986) (duties owed by landlord to tenant are determined by different principles than duty of landowner to invitee; tenant who had exclusive control over her rented house was not an invitee).

Whether a tenant of residential property such as a typical apartment lessee is a landlord's invitee for purposes of the leased premises itself may therefore turn in part on the extent of control a modern-day apartment tenant is considered to exercise over the leased premises. If a landowner may be defined as one "in possession" of the property, a tenant, and not a landlord, might qualify as a "landowner" with respect to the area inside the leased premises. *See* § 13–21–115(1), 6A C.R.S. (1987); *Knox v. Gray,* 289 Ark. 507, 712 S.W.2d 914, 915 (1986) (tenant's exclusive right to possession places tenant in position of owner).