Dennis SOHOCKI, Plaintiff–Appellant,

and

Sierra Club, Plaintiff/Intervenor–
Appellant,

v.

COLORADO AIR QUALITY CONTROL
COMMISSION, an agency of the State
of Colorado, Defendant–Appellee,

and

Colorado Springs Utilities; Platte River
Power Authority; Public Service Com-
pany of Colorado, Inc.; and Tri–State
Generation & Transmission Association,
Inc., Defendants/Intervenors–Appellees.

No. 98CA1861.

Colorado Court of Appeals,
Div. V.

Dec. 9, 1999.

Rehearing Denied March 30, 2000.

Certiorari Denied Oct. 23, 2000.

Stephen I. Singer, Denver, Colorado, for
Plaintiff–Appellant (On the Briefs).

Haddon, Morgan & Foreman, P.C., Janet C. Hoeffel, Denver, Colorado, for Plaintiff–Appellant.

Mark Hughes, Denver, Colorado, for Plaintiff/Intervenor–Appellant.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, John Daniel Dailey, Assistant Solicitor General, Anthony S. Trumbly, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee.

Friedlob Sanderson Raskin Paulson Tourtillott, LLC, James W. Sanderson, Paul M. Seby, Denver, Colorado, for Defendants/Intervenors–Appellees.

Opinion by Judge TAUBMAN.

In this action for judicial review of an agency rulemaking proceeding, plaintiff, Dennis Sohocki, and plaintiff/intervenor, the Sierra Club, appeal the district court's judgment affirming a rulemaking action of defendant, Colorado Air Quality Control Commission (AQCC), which modified existing air quality regulations. The following parties intervened in this action as individual defendants and as members of the Colorado Utilities Coalition for Clean Air (CUCCA): Colorado Springs Utilities; Platte River Power Authority; Public Service Company of Colorado, Inc.; and Tri–State Generation and Transmission Association, Inc. We affirm.

Upon review of AQCC's rulemaking proceedings, the district court made the following findings. On March 15, 1996, CUCCA filed a petition for rulemaking with AQCC. AQCC is an administrative agency created by statute to promulgate and enforce air pollution regulations in Colorado. CUCCA requested a change in the opacity and sulfur dioxide regulations for coal-fired utility boilers during periods of start-up, shutdown, and upset.

On April 10, 1996, AQCC published a notice of CUCCA's proposed regulation. The AQCC notice was amended on May 10, 1996, and clarified on July 10, 1996.

On June 13, 1996, AQCC granted the Sierra Club party status in the proceeding.

AQCC held a hearing regarding the proposed regulation on December 19 and 20, 1996. Three days later, it voted to adopt a modified version of the proposed regulation. The regulation took effect March 2, 1997.

On April 1, 1997, Sohocki filed this action for judicial review. On August 1, 1997, the district court granted the Sierra Club leave to intervene as a plaintiff, and granted CUCCA and its members leave to intervene as defendants.

## I. Disclosure by Commissioners

Sohocki and the Sierra Club contend that the district court erred when it determined that two AQCC commissioners were not required to disclose what plaintiffs allege were apparent or potential conflicts of interest. We agree that the district court applied an incorrect legal standard, but affirm the judgment on different grounds.

In October 1996, the first commissioner in question spoke with the executive director of the Colorado Department of Public Health and the Environment (CDPHE) regarding the creation of a temporary position for the commissioner in the Office of Public/Private Initiatives, if funding became available. Shortly after the AQCC rulemaking proceeding concluded, the commissioner resigned from her position with AQCC and accepted a temporary position with CDPHE in the Office of Public/Private Initiatives. After a competitive hiring process, the commissioner later obtained permanent employment in a different position with the Office of Public/Private Initiatives.

During the rulemaking proceedings, employees from the Division of Air Pollution Control (Division) served as staff for AQCC. The Division is a part of CDPHE. Its employees are CDPHE employees, and its director reports to the executive director of CDPHE. The Division reviewed CUCCA's petition for the new regulation, and after such review, drafted a proposal that addressed CUCCA's concerns while still complying with applicable air quality standards. AQCC considered this proposal, along with the proposal of the Sierra Club and public comment, during the rulemaking proceedings.

Sohocki and the Sierra Club argue that the first commissioner failed to disclose an apparent or potential conflict of interest. They assert that, based on the Division's support and help in drafting the new regulation, the commissioner voted for the Division's proposal, and possibly influenced the vote of others, at a time when she was seeking to obtain employment with CDPHE. We agree that this commissioner should have disclosed her interest, but disagree with plaintiffs that the appropriate remedy here is invalidation of the new air quality regulations.

The second commissioner at issue is an employee of a local brewing company. This brewery receives essentially all of its electrical power and steam from five boilers adjacent to its property, which are owned by a separate energy company. At least three of the five coal-fired boilers attached to the brewery were affected by the regulation promulgated by AQCC.

Sohocki and the Sierra Club urge that because the energy company would benefit from the new regulation, and the brewery is the only customer of the energy company with respect to the three boilers, the commissioner's failure to disclose his employment with the brewery and the brewery's relationship with the energy company was a potential or apparent conflict of interest. We are not persuaded.

■ The question whether the district court correctly interpreted the applicable regulations is a question of law, and is therefore subject to *de novo* review. *Lakeview Associates Ltd. v. Maes,* 907 P.2d 580 (Colo. 1995).

■ A correct judgment may be affirmed based on reasoning different from that of the trial court. *Barham v. Scalia,* 928 P.2d 1381 (Colo.App.1996).

A court shall affirm an agency rule unless the agency action is, among other things, not in accord with procedures or procedural limitations of the Colorado Administrative Procedure Act or otherwise required by law, is unsupported by substantial evidence when the record is considered as a whole, or is otherwise contrary to law. Section 24–4–106(7), C.R.S.1999.

■ Courts presume the validity of administrative regulations, and the challenging party has the burden of establishing the asserted invalidity beyond a reasonable doubt. *Stone Environmental Engineering Services, Inc. v. Colorado Department of Health,* 762 P.2d 737 (Colo.App.1988).

■ Here, the district court held that neither commissioner should have been *disqualified* from the rulemaking proceedings because the Sierra Club and Sohocki did not make a clear and convincing showing that the commissioners had "unalterably closed minds" during the proceedings. The court further held that neither the Sierra Club nor Sohocki had shown that the commissioners or the entities for which they worked would benefit from the promulgation of the modified regulation. The district court based these findings on federal case law concerning disqualification of an agency official arising from a conflict of interest. Because plaintiffs were contending only that the two commissioners should have disclosed their interests, the court applied an incorrect legal standard.

According to AQCC procedural rules in effect at the time of the rulemaking proceeding, a commissioner was required to disclose a conflict of interest if he or she "perceives that a real, potential, or apparent conflict of interest exists...." Department of Health Procedural Rules 5 Code Colo. Reg. 1001–1. This disclosure requirement is separate and distinct from the standards applied to disqualification.

In their arguments, Sohocki and the Sierra Club rely on the definitions of apparent and potential conflict contained in AQCC's revised procedural rules, promulgated in 1998. These rules were not in effect at the time of the rulemaking proceeding at issue.

■ When a rule is amended, it is presumed that the amendment was intended to change the law. However, this presumption may be rebutted by evidence that the amendment was intended to clarify an ambiguity. *See Southwest Capital Investments, Inc. v. Pioneer General Insurance Co.,* 924 P.2d 1205 (Colo.App.1996). As AQCC admits, the new procedural rules, including the revised definitions of apparent and potential conflict, clarified the prior rules. Therefore, we may

rely on those definitions to determine whether the two commissioners were required to disclose their interests.

According to the new rules:

An apparent conflict of interest means a personal or financial interest which could reasonably be perceived as an interest that may influence the Commissioner's decision. A potential conflict of interest means an apparent or actual conflict of interest that may come about due to reasonably foreseeable events.

Department of Public Health and Environment Procedural Rules, 5 Code Colo. Reg. 1001–1 1.10.1(2) – 1.10.1(3).

█ These definitions clarify that in addition to the subjective perceptions of commissioners regarding conflicts of interest, the perceptions of others are relevant. We therefore agree with AQCC that the new rules set forth both a subjective and an objective test for determining apparent or potential conflicts of interest.

Here, both commissioners met the subjective test contained in the procedural rules through their affidavits stating that they did not perceive that they had a conflict of interest at the time of the rulemaking proceedings.

To establish that disclosure was required under the objective test, Sohocki and the Sierra Club had the burden of showing that the commissioners in question had "a personal or financial interest which could reasonably be perceived as an interest that may influence the commissioner's decision," or that they had "an apparent or actual conflict of interest that may come about due to reasonably foreseeable events." We conclude that the first commissioner was required to disclose her employment negotiations with CDPHE, but that such failure to disclose does not invalidate the regulation. We also conclude that the second commissioner was not required to disclose his employment with the brewery and the brewery's relationship with the adjacent energy company.

## II. Duty to Disclose

### A. First Commissioner

██ It is undisputed that the first commissioner did not disclose her employment nego-

tiations with CDPHE. The commissioner's potential job opportunity was an apparent or potential conflict of interest that, pursuant to the AQCC procedural rules, should have been disclosed because of CDPHE's indirect role in the AQCC rulemaking proceedings. However, as discussed more fully below, this failure to disclose does not invalidate the regulation.

### B. Second Commissioner

█ We conclude that although the second commissioner did not disclose his employment with the brewery or the brewery's relationship with the adjacent energy company during the rulemaking proceeding at issue, disclosure was not required for two reasons. First, the commissioner had disclosed his employment and the relationship between the brewery and the energy company during a proceeding before the AQCC two months earlier. Second, because the commissioner was an industry representative, the other commissioners were presumably aware of his perspective regarding air quality issues and their effect on the industry for which he worked. See § 25–7–104(8), C.R.S.1999 (requiring that three members of AQCC have private sector, technical or industry employment).

We conclude that the second commissioner was not required to disclose his employment or the brewery's relationship with the adjacent energy company because, based on his previous disclosure, the other AQCC commissioners were aware of his interest and could assess his comments and position in light of that interest.

### III. Remedy for Non-disclosure

█ Although the AQCC procedural rules define conflicts of interest, they do not articulate a remedy if a member fails to disclose an alleged conflict of interest. Further, we are not aware of any Colorado case addressing the consequences if an agency official fails to disclose an alleged conflict of interest. Courts of other jurisdictions that have addressed this issue have established three remedial tests when a conflicted agency official participates in an agency decision without

disclosing a real or apparent conflict of interest.

First, some cases establish a prejudice test, holding that if a rule or regulation would have passed without the conflicted agency official's vote, the official's participation and voting will not invalidate the result. If, however, the vote of a conflicted official is the deciding vote, the result will be invalidated without further inquiry. *See Waikiki Resort Hotel, Inc. v. City & County of Honolulu*, 63 Haw. 222, 624 P.2d 1353 (1981) (collecting cases).

A second line of cases articulates the approach advocated by Sohocki and the Sierra Club, which is to invalidate the rule automatically when an agency official participates in the agency proceeding without disclosing a real or apparent conflict of interest. *See Buell v. City of Bremerton*, 80 Wash.2d 518, 495 P.2d 1358 (1972).

A third approach some courts apply is a balancing test that merges the two previous tests. Under this approach, a court must first determine whether the agency official with an undisclosed alleged conflict of interest cast the deciding vote. If so, the agency action must be invalidated because of the appearance of impropriety. If, however, the conflicted official's vote was not decisive, the court must examine three factors: (1) whether the official disclosed the interest, or whether the other officials were fully aware of it; (2) the extent of the official's participation in the proceeding; and (3) the magnitude of the official's alleged interest. *Griswold v. City of Homer*, 925 P.2d 1015 (Alaska 1996) (collecting cases).

If an interest is undisclosed, the agency action will only be valid if the official's participation and the magnitude of the interest are minimal. On the other hand, if the interest is disclosed, the agency action is presumed valid, unless the official's participation and the magnitude of the interest are so significant that it creates an intolerable appearance of impropriety. *Griswold v. City of Homer, supra*.

We decline to follow the *Waikiki* prejudice test because the participation of an agency official with an undisclosed real or apparent conflict of interest in an agency proceeding can have a more significant impact than what

the final vote reflects. Such official's participation may influence the votes of other officials, and allowing a decision to stand merely because the official's vote was not the deciding vote could lead to the appearance of impropriety.

We also decline to follow the automatic invalidation test because participation by an official with an undisclosed real or apparent conflict of interest will not always influence the votes of other officials. "Automatic invalidation has the potential of thwarting legislative enactments which are not in fact the result of improper influence." *Griswold v. City of Homer, supra*, 925 P.2d at 1028.

Therefore, we adopt the balancing test because it addresses two basic policy interests served by impartial decision-making: the accuracy of decisions and avoiding the appearance of impropriety. *Griswold v. City of Homer, supra*. In addition, the balancing test allows courts to perform a case-by-case analysis to determine whether the agency engaged in informed decision-making despite the conflicted official's participation.

■■ Sohocki and the Sierra Club had the burden of proving the invalidity of AQCC's regulation, despite the commissioners' nondisclosures.

■■ Here, the regulation passed by a unanimous vote of 8–0. Therefore, we do not automatically invalidate the regulation, but rather evaluate whether the regulation should be invalidated based on the three factors articulated above.

We conclude that the regulation is valid despite the first commissioner's non-disclosure because Sohocki and the Sierra Club failed to show that the magnitude of her interest and her participation in the rulemaking proceedings were so significant that they created an intolerable appearance of impropriety.

First, there is no evidence that CDPHE would have benefited from the promulgation of the modified regulations or that it had an interest in the outcome, thereby inducing the commissioner to vote for the new regulation in order to secure a job with CDPHE. Second, although the first commissioner presided over the proceedings, the record does not contain any evidence that her participation in discussions regarding the regulation, or her

influence over the votes of others, was more than *de minimis.*

Although Sohocki and the Sierra club assert that the first commissioner played an active role in the rulemaking proceedings, they did not provide a transcript of the proceedings in the record on appeal. Thus, we cannot evaluate the extent of the first commissioner's participation. *See Schuster v. Zwicker,* 659 P.2d 687 (Colo.1983) (it is the responsibility of the party asserting error to provide an adequate record for review; a judgment is presumed correct when no transcript disclosing error is provided to appellate court).

■ Further, even if we assume the second commissioner was required to disclose his interest, there was no evidence that he or the brewery for which he worked would have received any immediate or future benefit from the new regulations. Moreover, because a transcript of the rulemaking proceedings was not provided in the record, as noted above, there was no evidence that the second commissioner's participation in the proceedings was more than minimal.

Because Sohocki and the Sierra Club did not meet their burden of proving the invalidity of the regulation, the district court correctly concluded that the regulation was valid despite non-disclosure.

### IV. Comment Period

■ The Sierra Club contends that the district court erred when it determined that AQCC was not required to give the parties to the rulemaking proceeding four working days to comment on the final regulation because it differed from the proposed regulation. We disagree.

We do not address the Sierra Club's contention because we agree with AQCC that the Sierra Club waived its right to challenge AQCC's failure to provide a four-day comment period on the proposed final regulation.

■ A party may not raise a procedural objection to an agency rulemaking proceeding for the first time on appeal. Such objections must be presented first to the agency in

question for determination. *See Southern Pacific Transportation Co. v. Interstate Commerce Commission,* 69 F.3d 583 (D.C.Cir.1995); *Bergen Pines County Hospital v. New Jersey Department of Human Services,* 96 N.J. 456, 476 A.2d 784 (1984). Here, the record reflects that, during the rulemaking proceedings, the Sierra Club did not object to AQCC's failure to provide a four-day comment period.

Because the Sierra Club waited until it sought judicial review to challenge AQCC's failure to provide four working days for comment on the proposed final regulation, it may not raise this issue on appeal. Therefore, we affirm the district court's ruling on this issue, but for different reasons.

The judgment is affirmed.

Judge KAPELKE and Justice ERICKSON * concur.

---

\* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S.1999.