**Mark VALDEZ, Plaintiff–Appellee,**

v.

**Debbie J. PRINGLE, Defendant–Appellant.**

No. 04CA1210.

Colorado Court of Appeals, Div. I.

Dec. 29, 2005.

Certiorari Granted Oct. 16, 2006.

Roberts Levin & Patterson, P.C., Bradley A. Levin, Denver, Colorado; Caplis & Scipione, LLC, Daniel J. Caplis, Denver, Colorado, for Plaintiff–Appellee.

Walberg, Dagner & Tucker, P.C., Wendelyn K. Walberg, Molly A. Allen, Englewood, Colorado, for Defendant–Appellant.

Opinion by: Chief Judge DAVIDSON.

In this negligence action arising from a motor vehicle accident, defendant, Debbie J. Pringle, appeals from the judgment entered on a jury verdict in favor of plaintiff, Mark Valdez. We affirm.

## I. Background

Shortly after leaving a bar, Pringle drove her car into a concrete barrier. Valdez, the front seat passenger, was thrown through the windshield and suffered injuries, including facial lacerations and nerve damage. Valdez was not wearing his seat belt at the time of the accident.

Subsequently, Valdez brought this action against Pringle, alleging negligence. Thirty days before trial, Pringle filed a motion to amend her answer to include the affirmative defense of comparative negligence. She also moved for a continuance. Both motions were denied, and the case proceeded to trial.

At trial, Valdez requested damages for disfigurement, impairment, and noneconomic losses, including loss of quality of life, inconvenience, and emotional distress. However, pursuant to § 42–4–237(7), C.R.S.2005 (the seat belt defense), because he had not been wearing a seat belt, Valdez did not request

damages for pain and suffering. The jury returned a verdict in his favor and awarded him $400,000 for physical impairment and disfigurement, and $100,000 for noneconomic losses.

The court denied Pringle's request for a new trial or, alternatively, for a remittitur of the jury's verdict. Pringle appeals, asserting that the court's instructions improperly permitted the jury to consider evidence of pain and suffering; the verdict was, in any event, excessive; and the trial court abused its discretion in denying her motions to amend the answer and for a continuance. We disagree with all of these contentions.

## II. Pain and Suffering

Section 42–4–237(7) states:

Evidence of failure to comply with the [seat belt] requirement of subsection (2) of this section shall be admissible to mitigate damages with respect to any person who was involved in a motor vehicle accident and who seeks in any subsequent litigation to recover damages for injuries resulting from the accident. Such mitigation shall be limited to awards for *pain and suffering* and shall not be used for limiting recovery of economic loss and medical payments.

(Emphasis added.)

Although Valdez did not seek recovery of damages for pain and suffering, Pringle nevertheless presented evidence during the trial of Valdez's failure to wear a seat belt at the time of the accident. The court instructed the jury, however, that it was not to consider Valdez's failure to wear a seat belt as it related to his damages claims for loss of quality of life, inconvenience, and emotional distress. Pringle contends that this was error. We disagree.

### A.

As a threshold matter, we address and reject Valdez's argument that Pringle has waived this argument by failing properly to preserve her objection in the trial court.

C.R.C.P. 51 provides that parties shall make all objections to jury instructions before they are given to the jury, and only the

grounds so specified shall be considered on motion for a new trial or on appeal. *See Bear Valley Church of Christ v. DeBose*, 928 P.2d 1315, 1330 (Colo.1996) (purpose of C.R.C.P. 51's contemporaneous objection requirement is to allow trial courts to correct erroneous instructions before they are given to the jury, to prevent costly retrial caused by obvious errors). A party is not required, however, to submit jury instructions that are contrary to an earlier ruling of the court or otherwise continuously to object during trial to preserve the issue for appeal. *Maes v. Lakeview Assocs., Ltd.*, 892 P.2d 375, 376 (Colo.App.1994), *aff'd*, 907 P.2d 580 (Colo. 1995).

Here, both parties submitted pretrial briefs addressing whether "pain and suffering," as set forth in § 42–4–237(7), encompassed all noneconomic damages. The court ruled prior to trial that, pursuant to § 42–4–237(7), the seat belt defense only applied to "pain and suffering" damages and not to other noneconomic losses.

Defense counsel raised the issue during consideration of jury instructions, arguing again that "pain and suffering" included other noneconomic damages, such as loss of quality of life. In response, the trial court proposed a slightly revised instruction, to which Pringle raised a different objection.

Although Valdez argues otherwise, Pringle's objection on different grounds to the subsequent instruction proposed by the court did not constitute a waiver of her earlier objection. Pringle raised the issue numerous times, the court had ample opportunity to address it, and the issue, therefore, was properly preserved for appeal. *See Maes v. Lakeview Assocs., Ltd., supra,* 892 P.2d at 376.

### B.

Here, Pringle argues, as she did in the trial court, that the term "pain and suffering," as set forth in § 42–4–237(7), includes all noneconomic damages. In particular, Pringle points out that § 42–4–237(7) expressly exempts from the seat belt defense damages for "economic loss" and medical payments. It follows, according to Pringle,

that the intent of the statute was for the seat belt defense to apply to anything that was not an "economic loss," that is, all "noneconomic" losses. We do not agree.

Section 42–4–237(7) does not define "pain and suffering," nor does that provision refer to or define the term "noneconomic loss." However, "noneconomic loss" is defined in title 13, article 21, in the section establishing monetary limitations on damage awards for noneconomic losses and injuries. In that provision, the General Assembly defined "noneconomic loss or injury" as "nonpecuniary harm for which damages are recoverable by the person suffering the direct or primary loss or injury, *including pain and suffering,* inconvenience, emotional stress, and impairment of the quality of life." Section 13–21–102.5(2)(b), C.R.S.2005 (emphasis added).

As relevant here, we note that in that statute, the General Assembly placed the term "pain and suffering" in a nonexhaustive list of examples of noneconomic losses. We also note that the term "pain and suffering" is preceded by the word "including," which is commonly defined as "contain[ing] as a secondary or subordinate element." *See American Heritage Dictionary of the English Language,* 887 (4th ed.2000). From these definitions, we conclude that, as set forth in § 13–21–102.5(2)(b), the General Assembly intended to categorize pain and suffering as a subset of noneconomic loss rather than as a synonym for it.

We further conclude that the legislative classification in § 13–21–102.5(2)(b) of "pain and suffering" as only one of several discrete categories of noneconomic damages controls its meaning in § 42–4–237(7).

Section 13–21–102.5 applies to claims for noneconomic damages in all civil actions. *See* § 13–21–102.5(1), C.R.S.2005 ("The general assembly finds, determines, and declares that awards in civil actions for noneconomic losses or injuries often unduly burden the economic, commercial, and personal welfare of persons in this state; therefore, for the protection of the public peace, health, and welfare, the general assembly enacts this section placing monetary limitations on such damages for noneconomic losses or injuries."); *see also Preston v. Dupont,* 35 P.3d 433, 435–40 (Colo.2001) (§ 13–21–102.5 is a generally applicable cap on noneconomic damages). Although § 42–4–237, C.R.S. 2005, is contained in the article entitled "Regulation of Vehicles and Traffic," the subject matter of subsection (7) is civil actions, specifically, limitations on damages claims in lawsuits arising from motor vehicle accidents.

Thus, the statutory provisions setting forth a monetary cap on noneconomic damages are applicable here. Furthermore, as we have noted, there are no definitions provided in § 42–4–237. We therefore conclude that the definitions set forth in § 13–21–102.5 apply here.

First of all, it is not likely that the General Assembly intended for the same term with the same purpose to mean two different things within the same lawsuit. *See Gumina v. City of Sterling,* 119 P.3d 527, 530 (Colo. App.2004) (when reviewing a statute, court must look to statutory scheme as a whole to give consistent effect).

Second, the language of § 13–21–102.5 demonstrates that the General Assembly was aware of the distinction between "pain and suffering" and "noneconomic damages." Accordingly, its reference to "pain and suffering" in § 42–4–237(7), which was enacted later, is significant. *See Wolford v. Pinnacol Assurance,* 107 P.3d 947, 952 (Colo.2005) (when General Assembly adopts legislation, it is presumed to be aware of its other enactments). Thus, because § 42–4–237(7) specifies pain and suffering alone as the type of damages to which it applies, we must read it to exclude all other types of damages not so specified. *See Holdridge v. Bd. of Educ.,* 881 P.2d 448, 450 (Colo.App.1994) (when a statute specifies certain situations in which it is to apply, it must be construed to exclude all other situations not specified); *see also* CJI–Civ. 4th 5:2A (1998 Supp.) (seat belt defense applicable only to pain and suffering damages).

Accordingly, we conclude the seat belt defense of § 42–4–237(7) applies only to pain and suffering and not to other noneconomic losses. Thus, the trial court properly instructed the jury not to consider Valdez's failure to wear a seat belt as it related to his

claims for noneconomic losses other than pain and suffering.

## II. Jury Award

Pringle contends that the jury award of $400,000 for disfigurement and impairment and $100,000 for noneconomic damages excluding pain and suffering was manifestly excessive. We disagree.

■ The determination of damages is within the exclusive province of the jury and will not be disturbed on review unless the verdict is so grossly and manifestly excessive as to indicate passion or prejudice for the plaintiff. *Enright v. Groves,* 39 Colo.App. 39, 43, 560 P.2d 851, 855 (1977). Unless the award shocks the judicial conscience such that passion, prejudice, corruption, or other improper cause likely tainted the award, the jury's award is considered inviolate. *Higgs v. Dist. Court,* 713 P.2d 840, 860–61 (Colo. 1985).

■ When reviewing a jury's award, we view the record in the light most favorable to the prevailing party by drawing every inference fairly deducible from the evidence in favor of that party. *Furnary v. Merritt,* 837 P.2d 192, 196 (Colo.App.1991).

### A.

■ Pringle argues that the $400,000 jury award for disfigurement and impairment was not warranted by the evidence. Thus, Pringle asserts, the jury must have improperly taken into account Valdez's pain and suffering. We disagree.

Evidence at trial of Valdez's disfigurement and impairment included permanent nerve damage, swelling, and disfiguring scars. The jury also saw photographs of Valdez's face immediately after he left the hospital and heard testimony regarding the limited sensation in his upper and lower lip, as well as his continuing difficulty shaving and sleeping.

We conclude that the jury's $400,000 award for disfigurement and impairment is not so grossly and manifestly excessive as to indicate prejudice, nor does it shock the judicial conscience. From our review of the record, and with required deference to the verdict, *see Keohane v. Stewart,* 882 P.2d 1293, 1305 (Colo.1994), the jury's award for disfigurement and impairment was not so extraordinary so as to require us to conclude that it considered pain and suffering losses or injuries that had not been alleged.

### B.

■ We also disagree with Pringle's contention that the jury's $100,000 award for noneconomic damages, excluding pain and suffering, is manifestly excessive when compared with the $366,250 statutory cap on noneconomic damages.

There is record support for the jury's award of $100,000 for noneconomic damages. Valdez presented evidence that his facial lacerations required two surgeries and involved six months of outpatient treatment, caused sun sensitivity, limited his activities with his daughter, and caused him to feel self-conscious to the point that when he leaves the house, he wears makeup to cover the facial scarring. Valdez testified that, because of his self-consciousness, he was not able to meet or date people since the accident and that he believed people are hesitant around him because they think he received his lacerations from a fight.

Moreover, nothing in the cap placed by the General Assembly on the amount a jury may award for noneconomic damages other than impairment and disfigurement reflects an intent otherwise to limit the discretion of a jury to determine an award within the statutory range. Here, there was evidence presented of Valdez's inconvenience and diminution in his quality of life to support the amount decided upon by the jury, which, we also note, is less than one-third of the statutory cap.

## III. Motions to Amend and to Continue

We are also not persuaded by Pringle's contentions that the court erred in denying her motions to amend and to continue.

### A.

■ We disagree with Pringle's contention that the trial court abused its discretion by denying her motion to amend her answer to

include the affirmative defense of comparative negligence.

Once a responsive pleading has been filed, the decision whether to permit an amendment is left to the sound discretion of the trial court. C.R.C.P. 15(a); *Polk v. Denver Dist. Court,* 849 P.2d 23, 25–26 (Colo.1993).

Although leave should be freely given whenever justice so requires, the trial court has discretion to deny leave because of undue delay, bad faith, or undue prejudice. *Gaubatz v. Marquette Minerals, Inc.,* 688 P.2d 1128, 1129–30 (Colo.App.1984). When evaluating undue prejudice, "the court should weigh the prejudice to the opponent in granting the motion against the prejudice to the movant in denying the motion, bearing in mind that the movant carries the burden of demonstrating lack of knowledge, mistake, inadvertence, or other reason" for the delay. *Gaubatz v. Marquette Minerals, Inc., supra,* 688 P.2d at 1130.

Here, Pringle's request came almost a year after the complaint was filed, nine months after serving her answer, twenty days after the discovery deadline, five days after the motions deadline established by the court's pretrial order, and only thirty days before trial. In addition, Pringle did not include in her motion an explanation for her late request.

Furthermore, as the trial court determined, a late amendment would have been severely prejudicial. Valdez had undertaken no discovery regarding the proposed defense; he had not retained an accident reconstructionist or similar expert; nor had he prepared any animation or other responsive visual aids. Even if, as Pringle asserts, Valdez was aware of the underlying evidentiary facts, the trial court did not abuse its discretion by concluding that Valdez would have been unable adequately to rebut Pringle's proposed affirmative defense within the thirty days remaining before trial. *Cf. K–R Funds, Inc. v. Fox,* 640 P.2d 257, 258 (Colo. App.1981) (seven months before trial was sufficient time to prepare to rebut amended defense).

### B.

Pringle argues, however, that Valdez would have had sufficient time to prepare a response to her affirmative defense if the trial court had granted her motion to continue. Accordingly, Pringle maintains, the court abused its discretion by refusing to grant her request. Again, we disagree.

Whether to grant a continuance rests with the sound discretion of the trial court, and its decision will not be disturbed absent a clear showing of an abuse of discretion. *Cherry Creek Sch. Dist. No. 5 v. Voelker,* 859 P.2d 805, 809 (Colo.1993). A continuance shall only be granted for good cause and should be limited to unforeseen and exceptional circumstances. *See* C.R.C.P. 121 § 1–11; *Todd v. Bear Valley Vill. Apartments,* 980 P.2d 973, 976 (Colo.1999). The trial court should balance the movant's right to a fair trial against the prejudice to the opponent if the continuance were granted. *Cherry Creek Sch. Dist. No.5 v. Voelker, supra,* 859 P.2d at 809.

Here, Pringle sought a continuance to overcome her untimely request to amend her answer. However, as the trial court determined, the comparative negligence defense she sought to add did not arise from exceptional or unforeseen circumstances, nor did she act diligently in raising it. Even if, as Pringle now asserts, a comparative negligence defense was "rare" under the circumstances presented here, nothing prevented her from asserting it earlier. Hence, the trial court properly determined that Pringle failed to meet her burden of establishing good cause. *Cf. Todd v. Bear Valley Vill. Apartments, supra,* 980 P.2d at 976 (allegation of new evidence was not sufficient to justify continuance). In the exercise of its discretion, the trial court also properly noted that scheduling difficulties resulting from a postponed trial would have severely prejudiced Valdez.

Accordingly, we conclude that the trial court did not abuse its discretion by denying Pringle's motion for a continuance.

The judgment is affirmed.

Judge MARQUEZ and Judge WEBB concur.