The PEOPLE of the State of
Colorado, Petitioner,

v.

David COOPER, Respondent.

The People of the State of
Colorado, Petitioner,

v.

Joseph A. Rula, Respondent.

The People of the State of
Colorado, Petitioner,

v.

Franklin R. Joshua, Respondent.

The People of the State of
Colorado, Petitioner,

v.

Alfred Rodriguez, Respondent.

Nos. 00SC474, 00SC499, 00SC587
and 00SC588.

Supreme Court of Colorado,
En Banc.

June 25, 2001.

Ken Salazar, Attorney General, John J. Krause, First Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, CO, Attorneys for Petitioner.

David S. Kaplan, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Jonathan D. Rosen, Denver, CO, Attorneys for Respondent.

Joseph A. Rula, Respondent, pro se.

Justice MARTINEZ delivered the Opinion of the Court.

These four cases, which we have consolidated here, present a question of the extension of the issue we resolved in *Martin v. People*, 27 P.3d 846 (2001). We granted certiorari in all four of these cases to determine whether the court of appeals correctly concluded that the statutory scheme and legislative intent require that parole for sex offenders convicted of offenses committed between July 1, 1996, and November 1, 1998, is discretionary under the provisions in sections 17–2–201(5)(a.5) and 18–1–105(1)(a)(V)(C).[1]

Our inquiry focuses on two distinct statutory schemes of parole, and specifically, the changes enacted by the General Assembly to sections 18–1–105(1), 6 C.R.S. (2000), 17–2–201(5), 6 C.R.S. (2000), and 18–1–105(1)(a)(V)(C), in 1993, 1996, and 1998.

Despite some changes to the statutes considered in *Martin*, we arrive at the same resolution of these cases as we did in *Martin*. Specifically, we conclude that the exact same language in sections 17–2–201(5)(a) and (5)(a.5) has the identical meaning. Therefore, we hold that, under the statutes in effect when the defendants here were sentenced, a person convicted of a sexual offense committed after July 1, 1996, but before November 1, 1998, is subject to a period of discretionary parole, no longer than the remainder of the maximum sentence of incarceration imposed by the court. Accordingly, we affirm the judgment of the court of appeals in each of these four cases reversing the trial courts' denial of the defendants' Crim. P. 35(c) motions.

### I.

The specific facts of these four cases are not necessarily essential to the determination of the issues presented because the court of appeals concluded in each case that the defendant was not subject to mandatory parole. However, the cases do share some facts central to our analysis. To begin, in each of the four cases, the crime committed is a sexual offense, classifiable under section 17–2–201(5)(a.5), which occurred between July 1, 1996, and November 1, 1998. Additionally, in each case, the defendant appealed a trial court ruling denying a Crim. P. 35(c) motion for post-conviction relief. In *Rula, Joshua*, and *Rodriguez*, the defendants' Crim. P. 35(c) motions claimed that the sentencing court never adequately advised them that their sentences to the Department of Corrections (DOC) would be followed by a period of mandatory parole. Moreover, in *Joshua* and *Rodriguez*, as well as in *Cooper*, the defendants' motions claimed that the periods of

---

**1.** The petitions for writ of certiorari for each of the four cases all state this issue as follows: "Whether the statutory scheme and legislative intent require sex offenders who committed their crimes between July 1, 1996, and November 1, 1998, to be treated like other sex offenders and be subject to a period of mandatory parole that is served consecutively to their prison sentences and limited in length only by the length of the original sentence imposed by the trial court."

mandatory parole imposed by the DOC were in violation of their plea agreements. We note that, in *Cooper*, no advisement concerning parole was ever given to the defendant, either orally or in writing. In *Rula, Joshua,* and *Rodriguez,* the trial court did advise the defendants, either orally or in writing, of the possibility of a period of parole, however, we do not reach the issue of the sufficiency of those advisements.

We further note that, in none of the cases did the trial court address whether the defendant was subject to discretionary or mandatory parole. Nor did the trial court in any of the cases explicitly sentence the defendant to a period of mandatory parole. In both *Rula* and *Rodriguez,* the trial court did, on the mittimus, refer to parole to be set as required by law and included a statutory citation not useful to distinguishing between mandatory and discretionary parole.

For all of these cases, in the time period between the original trial court rulings and the court of appeals' rulings, this court issued its decision in both *Craig v. People,* 986 P.2d 951 (Colo.1999), and *Benavidez v. People,* 986 P.2d 943 (Colo.1999). In both of those cases, we held that a plea entered into without an adequate advisement of the direct consequence of mandatory parole is constitutionally infirm and subject to withdrawal unless such infirmity is harmless, or can be rendered harmless by a modified legal sentence. *Craig,* 986 P.2d at 957. In each of the four cases here, the court of appeals held that it was not necessary for the trial court to advise the defendant of mandatory parole because the defendant was not subject to mandatory parole under section 18–1–105(1)(a)(V). Instead, the court of appeals held, these defendants were all subject to discretionary parole under sections 17–2–201(5)(a.5) and 18–1–105(1)(a)(V)(C).[2] *People v. Cooper,* 8 P.3d 554, 557–58 (Colo.App. 2000); *People v. Rula,* No. 99CA1522, slip op. at 2 (Colo.App. Mar. 16, 2000); *People v.*

*Joshua,* No. 99CA0712, slip op. at 2 (Colo. App. Apr. 27, 2000); *People v. Rodriguez,* No. 99CA0764, slip op. at 2–3 (Colo.App. July 13, 2000). It is that holding that the People now appeal.

Notwithstanding the marginal analytical utility, we now describe the facts of each case to assist in distinguishing one from another.

## A.

Defendant David Cooper (Cooper) pleaded guilty in January 1998 to sexual assault in the second degree in violation of section 18–3–403(1)(b), 6 C.R.S. (2000), an offense committed on July 28, 1996. Cooper was initially charged with sexual assault in the first degree, attempted first degree assault, and crime of violence. Additionally, three charges of habitual criminal were added against Cooper in November 1996. In June 1997, the district court found Cooper incompetent to proceed and ordered him to the Colorado Mental Health Institute. In October 1997, the district court found that Cooper had been restored to competency and proceeded with the trial.

Cooper entered into an oral plea bargain which stipulated a five-year DOC sentence, with no mention of parole. Pursuant to that plea bargain, Cooper pleaded guilty to second degree sexual assault. Throughout the entire plea bargain and sentencing process, Cooper was never advised, either in writing or orally, of any mandatory parole period. At sentencing, the trial court sentenced him to five years in DOC.

Cooper filed a Crim. P. 35(c) motion for post-conviction relief alleging that he was denied sufficient good time credit and that the imposition of a five year mandatory period of parole by the DOC violated his plea agreement. In a minute order dated August 3, 1998, the trial court granted Cooper's good time credit, but denied his mandatory parole claim. Cooper appealed, and the court of

---

**2.** The issue of discretionary parole for sex offenders committing offenses on or after July 1, 1996, was first raised by Cooper in his opening brief to the court of appeals. In its decision in *Cooper,* the court of appeals agreed with Cooper's argument that sections 17–2–201(5)(a.5) and 18–1–105(1)(a)(V)(C) govern parole for that group of offenders. While the other defendants did not raise this issue in their briefs to the court of appeals, the court of appeals followed its initial holding in *Cooper* in each of the subsequent cases, and held that all of the defendants were subject to discretionary parole pursuant to sections 17–2–201(5)(a.5) and 18–1–105(1)(a)(V)(C).

appeals ruled that, under sections 17–2–201(5)(a.5), 6 C.R.S. (2000), and 18–1–105(1)(a)(V)(C), 6 C.R.S. (2000), the period of parole could not exceed the remainder of Cooper's sentence at the time of his parole from prison. The court of appeals also held that the legislature excepted sex offenders who committed crimes between July 1, 1996, and November 1, 1998, from the mandatory parole requirements of section 18–1–105(1)(a)(V), and instead meant for such offenders to receive discretionary parole under sections 17–2–201(5)(a.5) and 18–1–105(1)(a)(V)(C). Accordingly, the court of appeals held that Cooper, as a sex offender, was subject to discretionary, not mandatory, parole. *Cooper*, 8 P.3d at 557–58. The People now appeal that decision.

### B.

Defendant Joseph A. Rula (Rula) pleaded guilty in June 1997, to one count of sexual assault on a child, in violation of section 18–3–405(1), 6 C.R.S. (2000), an offense committed on November 3, 1996. Rula was initially charged with two counts of sexual assault on a child by a person in a position of trust, one count of indecent exposure, and three counts of indecent exposure to a child.

Rula entered into a plea bargain in which the People agreed to drop the original six counts against him. The plea agreement did not include any sentencing agreement, though the plea petition that he signed did advise him that any sentence he received would carry with it a five-year period of parole. Pursuant to the plea agreement, Rula pleaded guilty to sexual assault of a child, and the trial court, without ever discussing parole, sentenced him to eight years in the DOC. On the mittimus, the trial judge marked a box stating, "plus any term of parole authorized by section 17–22.5–303, C.R.S.," but made no other comments regarding parole.[3]

Rula filed a Crim. P. 35(c) motion for post-conviction relief, asserting that neither the providency nor the sentencing court advised him that his sentence to the DOC would be followed by a five-year period of parole. The trial court denied his motion, and the court of appeals affirmed, reasoning that, because Rula's parole period is discretionary and not a direct consequence of his plea, the trial court was not obliged to advise him of it. Accordingly, the court of appeals further held that Rula, as a sex offender, was subject to discretionary parole under sections 17–2–201(5)(a.5) and 18–1–105(1)(a)(V)(C). *Rula*, No. 99CA1522, slip op. at 2 (citing *Cooper*, 8 P.3d 554). The People now appeal that decision.

### C.

Defendant Franklin R. Joshua (Joshua) pleaded guilty in March 1997, to one count of sexual assault on a child in violation of section 18–3–405(1), 6 C.R.S. (2000), an offense committed on November 24, 1996. Joshua was initially charged with sexual assault on a child, sexual assault in the second degree, two counts of sexual assault in the third degree, assault in the third degree, and crime of violence resulting from bodily injury during a sexual offense.

Joshua entered into a plea bargain in which the People agreed to drop the other five counts against him. The plea request that Joshua signed advised him that any sentence he received could carry up to a five-year period of parole. Pursuant to his plea bargain, Joshua pleaded guilty to sexual assault of a child, and agreed to an eight-year sentence to Community Corrections in the sex offender program. Because Community Corrections rejected Joshua, the People and the defendant subsequently agreed to a seven-year sentence to DOC. The sentencing court did not sentence Joshua to any parole.[4]

---

**3.** Section 17–22.5–303, 6 C.R.S. (2000), generally discusses the concepts of "good time" and "earned time," and how those concepts play a role in the state board of parole's decision of whether and when to grant parole to an offender. The only reference made to length of parole is, "[T]he state board of parole ... shall determine ... the length of the period of parole, which may be for a period of up to five years." § 17–22.5–303(6). The trial court's acknowledgment of this section in the mittimus does not necessarily implicate one type of parole over another.

**4.** The mittimus form in this case contained a box that referred to a period of parole as required by law which the trial judge did not check.

Joshua filed a Crim. P. 35(c) motion for post-conviction relief, asserting that he had not been advised that his sentence to the DOC would be followed by a five-year period of mandatory parole, and that such a period of parole, when added to his DOC sentence, exceeded the seven-year stipulation in the plea agreement. The trial court denied his motion, concluding that Joshua received adequate advisement of the parole period in his written request to plead guilty form. The court of appeals affirmed the outcome of the trial court's decision, holding that the lower court was not required to advise him regarding mandatory parole. The reasoning of the court of appeals was that Joshua was not subject to mandatory parole. Instead, the appellate court held that Joshua is subject to discretionary parole under section 18–1–105(1)(a)(V)(C). *Joshua*, No. 99CA0712, slip op. at 2 (citing *Cooper*, 8 P.3d 554). The People now appeal that decision.

### D.

Defendant Alfred Rodriguez (Rodriguez) pleaded guilty in May 1998, to one count of attempted first degree sexual assault in violation of section 18–3–402(1)(b), 6 C.R.S. (2000), an offense committed on January 19, 1998. Rodriguez was initially charged with second degree kidnapping, first degree sexual assault, and felony menacing.

Rodriguez entered into an oral plea agreement in which the People agreed to drop the original three counts against him. Pursuant to that oral plea bargain, Rodriguez pleaded guilty to attempted first degree sexual assault, and agreed to a five-year sentence to the DOC. At the providency hearing, the court advised Rodriguez of the range of possible sentences for his crime, as well as the possibility of three years of parole. The court then imposed the five-year DOC sentence, as agreed to during plea bargaining negotiations. The court did not, at that time, impose any parole upon Rodriguez. A document entitled, "Sentencing Memorandum" is

consistent with that oral sentence in that it also fails to order any period of parole for Rodriguez. The mittimus states "plus any term of parole authorized by § 18–1–105(1)(a)(V)." [5]

Rodriguez filed a Crim. P. 35(c) motion for post-conviction relief, asserting that he had not been properly advised that his sentence to the DOC would be followed by a three-year period of parole. Rodriguez argued that his sentence should be modified so that his total sentence, including the period of parole, does not exceed five years. The trial court denied his motion, finding that Rodriguez received adequate advisement of the range of penalties, including the term of parole. The court of appeals affirmed the trial court's ruling, but reached its conclusion based on different reasoning. The court of appeals held that, because the trial court was not required to advise him regarding mandatory parole, any deficiencies that Rodriguez claimed in the advisement did not entitle him to any post-conviction relief. The court of appeals continued further reasoned that the trial court was not required to advise him of mandatory parole because Rodriguez was subject to discretionary parole under section 18–1–105(1)(a)(V)(C). *Rodriguez*, No. 99CA0764, slip op. at 2–3 (citing *Cooper*, 8 P.3d 554). The People now appeal that decision.

### II.

To properly analyze the case before us, we must first begin with an explication of the legislative history in the area of parole. Many changes have been made to the laws surrounding parole in the past two decades, and interpretation of the statutes is a multifaceted and confusing task. Therefore, to clarify the situation, we now set forth a brief history of these legislative changes. *See Martin*, 27 P.3d at 849–851 (giving a de-

---

**5.** Because section 18–1–105(1)(a)(V) is the subparagraph which not only includes mandatory parole, *see* sub-subparagraph (A), but also discretionary parole, *see* sub-subparagraph (C), the trial court's inclusion of this section in the mittimus does not necessarily reference one type of parole over another. Instead, both schemes of parole are brought into question by the trial court's reference.

tailed history of the legislative changes to sex offender parole).

Section 17–2–201, 6 C.R.S. (2000), governs the creation of the state board of parole (board) and delineates the board's powers. This section evolved from section 39–18–1, 16 C.R.S. (1971), in which the board received the sole power to grant, or refuse to grant parole, and to fix the condition of such parole. Additionally, the parole board had "full discretion to set the duration of the term of parole granted, but in no event ... [could] the term of parole exceed the maximum sentence imposed upon the inmate by the court." § 39–18–1(4). After more renumbering and reenactments in 1976 and 1977, the section appeared in its current location, 17–2–201(5)(a). *See* ch. 223, sec. 10, Title 17, 1977 Colo. Sess. Laws 894, 903–49.

In 1979, the legislature amended the felony sentencing scheme, creating "presumptive ranges of penalties" as guidelines for a court to order a specific term of imprisonment, and mandating the release of most convicted offenders to a one-year period of parole once such offenders accumulated the appropriate number of "good" and "earned" time credits. *See* ch. 157, sec. 10, § 16–11–310, 1979 Colo. Sess. Laws 662, 666; ch. 157, sec. 16, § 18–1–105, 1979 Colo. Sess. Laws 669, 669–70. In the same year, the General Assembly also amended section 17–2–201(5)(a), adding language stating that the board had full discretion to set parole for Title 16 sex offenders.[6] Ch. 157, sec. 12, § 17–2–201(5)(a), 1979 Colo. Sess. Laws 662, 667. This new amendment also added a five-year limitation to its requirement that the period of parole not exceed the maximum sentence imposed, stating, "in no event shall the term of parole exceed the maximum sentence imposed upon the inmate by the court *or five years, whichever is less.*" *Id.* (emphasis in original).

After various amendments to parole statutes between 1979 and 1990, in 1993, the General Assembly enacted the most signifi-

cant change when it adopted a scheme of mandatory parole for convicted felons. *See* ch. 322, sec. 7, § 18–1–105(1)(a)(V), 1993 Colo. Sess. Laws 1975, 1981–82. Under this new scheme, the legislature adopted section 18–1–105(1)(a)(V), which detailed the length of mandatory periods of parole for felons, basing the length of the parole periods on the class of felony for which the individual was convicted. *Id.* The length of prison terms and parole terms became separate components of the penalty imposed by the court, with each penalty now including not only a determinate sentence of imprisonment, but also a pre-determined period of parole. This new scheme of parole also eliminated the authority of the board to determine the length of parole for most offenders. However, despite the sudden shift to mandatory parole, section 17–2–201(5)(a), providing discretionary parole for sex offenders, was not amended or repealed.

In 1996, the General Assembly added section 17–2–201(5)(a.5), giving the same discretionary powers to the board as in section 17–2–201(5)(a), but applying the section to individuals committing offenses on or after July 1, 1996. Ch. 280, sec. 6, § 17–2–201(5)(a), 1996 Colo. Sess. Laws 1578, 1584–85. The legislature also revised section 17–2–201(5)(a), specifying that paragraph (a) applies to persons convicted of offenses committed prior to July 1, 1996. *See* ch. 280, sec. 6, § 17–2–201(5)(a), 1996 Colo. Sess. Laws 1578, 1584; § 17–2–201(5)(a), 6 C.R.S. (2000). Thus, sections 17–2–201(5)(a) and (a.5), when read together, provide that the board retained its powers over sex offender parole for offenses committed on and after, as well as before, July 1, 1996.

In 1998, the General Assembly once again revised sex offender parole laws by amending section 18–1–105(1)(a)(V)(C). Ch. 139,

---

6. Throughout this opinion, we refer to "sex offenders," as well as to "individuals convicted of sex offenses." These terms, used interchangeably, refer specifically to those individuals specified in section 17–2–201(5)(a.5), 6 C.R.S. (2000). That section uses the definition of "unlawful sexual behavior," as defined in section 18–3–412.5(1), 6 C.R.S. (1997), to specify those individuals who fall under its provisions. We also refer to the "Title 16 sex offenders." This term

refers to persons convicted of sex offenses as specified in section 17–2–201(5)(a), 8A C.R.S. (1986 & Supp.1996). That section defines sex offenses based upon the definition found in section 16–13–202(5), 8A C.R.S. (1986 & Supp. 1996). Finally, we use the term "Lifetime Supervision sex offenders" to refer to those individuals whose parole and sentencing is governed by the provisions in part 8 of article 13 of Title 18, 6 C.R.S. (2000).

sec. 6, § 18–1–105(1)(a)(V)(C), 1998 Colo. Sess. Laws 389, 399; § 18–1–105(1)(a)(V)(C), 6 C.R.S. (2000). The new section 18–1–105(1)(a)(V)(C) adopted the language utilized in both sections 17–2–201(5)(a) and (a.5), stating, "in no event shall the term of parole exceed the maximum sentence imposed upon the inmate by the court." § 18–1–105(1)(a)(V)(C). Furthermore, this section states that the period of parole for sex offenders who committed offenses on or after July 1, 1996, "shall be set by the state board of parole pursuant to section 17–2–201(5)(a.5)." *Id.* Thus, the language of section 18–1–105(1)(a)(V)(C) clearly refers sex offenders to the discretionary parole scheme of section 17–2–201(5)(a.5).

In 1998, the legislature also introduced the Colorado Lifetime Supervision Act (the Act). *See* ch. 303, sec. 1, § 16–13 part 8, 1998 Colo. Sess. Laws 1278–88. Under the Act, the General Assembly created a program through which Lifetime Supervision sex offenders could, if necessary, receive treatment and supervision for the rest of their lives. § 16–13–801, 6 C.R.S. (2000). Similar to section 17–2–201(5), the board retains control over Lifetime Supervision sex offenders' parole until such time as the board finds that an offender has been rehabilitated to a point where supervision is no longer required. § 16–13–806. Despite its name, the Act does not actually sentence Lifetime Supervision sex offenders to automatic lifetime parole, but instead mandates minimum periods that Lifetime Supervision sex offenders must serve·on parole. *Id.*

### III.

Because resolution of this case turns on an interpretation of the several statutes governing imposition of parole, we must first discuss the relevant principles of statutory construction. We then apply those principles of statutory construction to these parole provisions, resulting in our conclusion that section 17–2–201(5)(a.5) limits the term of parole to which any of the defendants may be sentenced to the unserved remainder of their prison sentences.

### A.

Our fundamental responsibility in interpreting a statute is to give effect to the General Assembly's purpose or intent in enacting the statute. *See Martin*, 27 P.3d at 851; *Reg'l Transp. Dist. v. Lopez*, 916 P.2d 1187, 1192 (Colo.1996); *Lakeview Assocs. v. Maes*, 907 P.2d 580, 584 (Colo.1995). Our interpretive efforts begin with the language of the statute itself. *Martin*, 27 P.3d at 851; *see Lopez*, 916 P.2d at 1192; *Maes*, 907 P.2d at 584. If the statutory language unambiguously sets forth the legislative purpose, we need not apply additional rules of statutory construction to determine the statute's meaning. *Martin*, 27 P.3d at 851; *see Lopez*, 916 P.2d at 1192; *Maes*, 907 P.2d at 584. However, if the statutory language does not unambiguously establish the General Assembly's purpose in enacting the statute, or if the statute appears to conflict with other provisions, then we may rely on other factors, such as legislative history, prior law, the consequences of a given construction of the statute, and the end to be achieved by the statute, to determine the meaning of a statute. *Martin*, 27 P.3d at 85; *see* § 2–4–203, 1 C.R.S. (2000); *Schubert v. People*, 698 P.2d 788, 793–94 (Colo.1985).

Our analysis of any part of a statute is based on the assumption that the General Assembly intended that the entire statute be effective. § 2–4–201(1)(b), 1 C.R.S. (2000); *Martin*, 27 P.3d at 851. We "must read and consider the statutory scheme as a whole to give consistent, harmonious and sensible effect to all its parts." *Martin*, 27 P.3d at 851; *Charnes v. Boom*, 766 P.2d 665, 667 (Colo. 1988); *see also Bynum v. Kautzky*, 784 P.2d 735, 738 (Colo.1989)("If possible, we must try to reconcile statutes governing the same subject."). In interpreting a comprehensive legislative scheme, we must construe each provision to further the overall legislative intent behind the statutes. *Martin*, 27 P.3d at 851–852; *see A.B. Hirschfeld Press, Inc. v. City & County of Denver*, 806 P.2d 917, 920 (Colo. 1991).

If statutes conflict irreconcilably, the General Assembly has directed us to apply spe-

cial rules of construction to determine which statute will prevail. §§ 2–4–204 to –207. Those rules state that if a general provision conflicts with a specific provision, then "the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail." § 2–4–205, 1 C.R.S. (2000); *Martin,* 27 P.3d at 852. This legislative direction is consistent with common law principles of statutory construction. *Martin,* 27 P.3d at 852; *see Clifford F. MacEvoy Co. v. United States,* 322 U.S. 102, 107, 64 S.Ct. 890, 88 L.Ed. 1163 (1944)("Specific terms prevail over the general in the same or another statute which otherwise might be controlling.") (citing *D. Ginsberg & Sons, Inc. v. Popkin,* 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704 (1932); *Colo. Permanente Med. Group, P.C. v. Evans,* 926 P.2d 1218, 1236 (1996)("Generally, a specific statutory provision prevails over a general provision.")(Mullarkey, J., dissenting in part)).

▪ Interpreting a specific provision as prevailing over a general one still allows for both provisions to exist. *Martin,* 27 P.3d at 852; *Bd. of County Comm'rs v. Bainbridge, Inc.,* 929 P.2d 691, 716 n. 4 (Colo.1996) (Vollack, C.J., dissenting) (reasoning that specific provision prevails over general provision in order to "construe these two statutes in harmony before having to discard one"). If general provisions prevailed over specific ones, then specific provisions would cease to function entirely. As such, we must carefully determine which provisions are general, and which are specific, in order to give full and sensible effect to the entire statutory scheme. *See* § 2–4–201(1)(b); *Martin,* 27 P.3d at 852; *Charnes,* 766 P.2d at 667.

### B.

As further explained below, we conclude that the language of the versions of sections 17–2–201(5), 17–22.5–403, and 18–1–105(1) in effect when the defendants were sentenced, do not unambiguously set forth the legislative intent concerning the parole term to which a defendant convicted of a sex offense

may be sentenced. Therefore, we must look beyond the statutory language to determine the legislature's intent. *Martin,* 27 P.3d at 852; *see Lopez,* 916 P.2d at 1192; *Maes,* 907 P.2d at 584. We first begin, however, with a discussion of section 17–2–201(5)(a.5).

As stated above, section 17–2–201(5)(a.5) was enacted in 1996. *See* ch. 280, sec. 6, § 17–2–201(5)(a), 1996 Colo. Sess. Laws 1578, 1584–85. This section adopted the exact language found in section 17–2–201(5)(a) pertaining to individuals convicted of sexual offenses. Compare § 17–2–201(5)(a) with § 17–2–201(5)(a.5). Section 17–2–201(5)(a.5) provides that:

> As to any person sentenced for a conviction of an offense involving unlawful sexual behavior, or for which the factual basis involved an offense involving unlawful sexual behavior as defined in section 18–3–412.5(1), C.R.S., committed on or after July 1, 1996, the board has the sole power to grant or refuse to grant parole and to fix the condition thereof and has full discretion to set the duration of the term of parole granted, but in no event shall the term of parole exceed the maximum sentence imposed upon the inmate by the court.

In *Martin,* we interpreted the language of paragraph (a) of section 17–2–201(5), which is the exact same language in paragraph (a.5). *Martin,* 27 P.3d at 852–855. In that case, we held that, historically, the phrase "in no event shall the term of parole exceed the maximum sentence imposed upon the inmate by the court," had been previously interpreted to mean that the period of parole granted by the parole board cannot be longer than the unserved portion of the sentence of incarceration. *Id.* at 855 (citing *Duran v. Price,* 868 P.2d 375 (Colo.1994)(holding that the language of the 1978 version of section 17–2–201(5)(a) confined the length of parole to the time remaining on a sentence of imprisonment)). Thus, for example, a sex offender sentenced to nine years in prison who has served five years of his sentence at the time of parole, can be required to serve only four years of parole, because those four years

represent the remainder of the unserved time of his original sentence.

We further held in *Martin,* that the addition of the five-year limiting language that is found in paragraph (a) only functioned to cap the length of the parole period that inmates could be made to serve. *Martin,* 27 P.3d at 853. *see* ch. 157, sec. 12, § 17–2–201(5)(a), 1979 Colo. Sess. Laws 662, 667 (adding the five-year limitation). No changes were made to the language in the statute referencing the length of the parole term. Despite the advent of determinate sentencing and mandatory parole in 1993, the language in section 17–2–201(5)(a) remained the same. *See* ch. 322, sec.7, § 18–1–105(1)(a)(V), 1993 Colo. Sess. Laws 1975, 1981–82. When paragraph (a.5) of section 17–2–201(5) was adopted in 1996, the language chosen by the General Assembly matched the same language as had been interpreted in *Duran.* Ch. 280, sec. 6, § 17–2–201(5)(a), 1996 Colo. Sess. Laws at 1585.

■ Thus, because the language in section 17–2–201(5)(a.5) exactly matches the language in section 17–2–201(5)(a), we hold that the meaning of that language is also identical. In our decision in *Martin,* we held that the interpretation of section 17–2–201(5)(a) has not changed despite the many amendments to that provision. *Martin,* 27 P.3d at 855. We interpreted section 17–2–201(5)(a) to mean that, for individuals convicted of offenses involving unlawful sexual behavior committed prior to July 1, 1996, the board may grant a period of parole that may be no longer than the unserved remainder of the offender's sentence at the time of his parole, or five years, whichever is less. *Id.* at 26. As such, we now hold that the language of section 7–2–201(5)(a.5), "in no event shall the term of parole exceed the maximum sentence imposed upon the inmate by the court," means that, for persons convicted of offenses involving unlawful sexual behavior committed on or after July 1, 1996, the period of parole granted by the parole board may be no longer than the unserved remainder of the offender's sentence at the time of his parole.

## C.

As discussed above, under section 17–2–201(5)(a.5), the parole terms of the defendants in the cases before us could not extend beyond the remaining length of their terms of incarceration. Pursuant to that provision, discretion to grant parole for these defendants is solely in the hands of the board, which may set a term of parole no longer than the length of the unserved remainder of the defendants' prison sentences. If this were the only provision bearing on these cases, then it would clearly follow that any mandatory parole term ordered for the defendants would be invalid. However, the full statutory picture is further complicated by sections 17–22.5–403 and 18–1–105(1)(a)(V).

Section 17–22.5–403(7)(a), 6 C.R.S. (2000) states in pertinent part that:

> For any offender who is incarcerated for an offense committed on or after July 1, 1993, upon application for parole, the state board of parole ... shall determine whether or not to grant parole. The state board of parole, if it determines that placing an offender on parole is appropriate, shall set the length of parole at the mandatory period of parole established in section 18–1–105(1)(a)(V), C.R.S.

This provision was enacted in 1993. *See* ch. 322, sec. 4, § 17–22.5–403, 1993 Colo. Sess. Laws 1975, 1980. By the plain language of both section 17–22.5–403(7)(a) and section 17–2–201(5)(a.5), each statute applies to the determination of parole for the defendants in these cases. All of the offenses here were committed after July 1, 1993, making section 17–22.5–403(7)(a) applicable. However, these offenses were also committed after July 1, 1996, thus making section 17–2–201(5)(a.5) applicable.

The problem with applying both statutes to the cases before us is that section 17–22.5–403(7)(a) requires that the length of parole be set at the mandatory period of parole established in section 18–1–105(1)(a)(V), whereas section 17–2–201(5)(a.5) provides for discretionary parole. According to the version of section 18–1–105(1)(a)(V) in effect when these defendants committed their various offenses, any person convicted of a sexual assault, as defined in part 4, article 3 of Title

18, or part 3, article 6 of Title 18, is subject to a mandatory period of parole of five years. § 18–1–105(1)(a)(V)(C), 6 C.R.S. (1997). This five-year required period of mandatory parole is facially inconsistent with the parole provision in section 17–2–201(5)(a.5), which allows for a discretionary period of parole possibly less than, or even greater than, five years.

Because these two statutes are in direct conflict, we now turn to the task of determining which statute takes precedence. As in *Martin*, neither provision's plain language presents a clear and unambiguous answer to that question. Accordingly, we must turn to additional rules of statutory construction. *Martin*, 27 P.3d at 860; *see Lopez*, 916 P.2d at 1192; *Maes*, 907 P.2d at 584.

As we have noted, if two statutes are irreconcilable, a special or local provision prevails as an exception to a general provision, unless the general provision is later in adoption and the legislative intent is that the general provision prevail. § 2–4–205, 1 C.R.S. (2000); *Martin*, 27 P.3d at 860; *Bainbridge*, 929 P.2d at 716 n. 4 (Vollack, C.J., dissenting). We begin our specific/general analysis by looking at section 17–22.5–403(7). As we determined in *Martin*, this section is a general provision requiring that all persons convicted of felonies on or after July 1, 1993, be placed on parole, if the board determines that parole is appropriate under the guidelines set forth in section 18–1–105(1)(a)(V). *Martin*, 27 P.3d at 861. For all intents and purposes, section 17–22.5–403(7) acts a threshold through which convicted felons must pass before arriving at the sentencing scheme in Title 18. *Id.* Thus, our analysis must focus on the relationship between sections 17–22.5–403(7) and 17–2–201(5)(a.5), and their treatment of sex offender parole. Because we have determined that section 17–22.5–403(7) is a general provision, we must now turn to section 17–2–201(5)(a.5).

Section 17–2–201(5)(a.5) applies specifically to sex offenders and to the determination of parole for such offenders. Because the language of this section is identical to that of section 17–2–201(5)(a), and we presume that the legislature is aware of our previously expressed understanding of specific language, we may assume that the legislature was aware, when they enacted section 17–2–201(5)(a.5), that they were creating an exception to the general felony sentencing statute, section 17–22.5–403(7). *Martin*, 27 P.3d at 861–862; *see Swain*, 959 P.2d at 430–31; *Vaughan*, 945 P.2d at 409; *Tompkins*, 197 Colo. at 570–71, 595 P.2d at 243–44. Furthermore, because section 17–2–201(5)(a.5), like section 17–2–201(5)(a), specifically addresses discretionary parole for sex offenders, we construe section 17–2–201(5)(a.5) as specific. *See Martin*, 27 P.3d at 862. As such, section 17–2–201(5)(a.5) is an exception to the general sentencing scheme in place for felons, and dictates that offenders convicted of offenses involving either unlawful sexual behavior, or for which the factual basis involved an offense involving unlawful sexual behavior as defined in section 18–3–412.5(1), C.R.S., committed between July 1, 1996, and November 1, 1998, are subject to discretionary parole. § 17–2–201(5)(a.5).[7]

■ Accordingly, we hold that section 17–2–201(5)(a.5) is a specific provision which prevails over the general felonious offender sentencing provision of section 17–22.5–403(7), and thus, section 18–1–105(1)(a)(V) does not apply to the offenders in these cases. Because the specific section, 17–2–201(5)(a.5), acts as an exception to the general provision, section 17–22.5–403(7), our holding allows for both sections to function harmoniously, and gives full and sensible effect to the statutory scheme. *See* § 2–4–201(1)(b); *Charnes*, 766 P.2d at 667; *Bainbridge*, 929 P.2d at 716 n. 4 (Vollack, C.J., dissenting). As such, the sentencing courts in each of these cases erred in sentencing the defendants to periods of mandatory parole. Pursuant to section 17–2–201(5)(a.5), the board is vested with the sole discretionary authority to grant and set parole for these defendants. Under sections 17–2–201(5)(a.5) and 18–1–105(1)(a)(V)(C),

7. Our holding does not address parole for any offenders convicted of sexual offenses occurring after November 1, 1998, because of the 1998 enactment of the Colorado Lifetime Supervision Act, which purports to govern parole for such offenders. § 16–13–806.

that period of discretionary parole may not exceed the undischarged remainder of the sentence of incarceration to which the defendants were ordered.

## IV.

We hold that, for persons convicted of sex offenses occurring between July 1, 1996, and November 1, 1998, section 17–2–201(5)(a.5) is the specific provision that requires discretionary parole. Furthermore, the mandate in section 18–1–105(1)(a)(V)(C) that sex offenders be sentenced to parole pursuant to section 17–2–201(5)(a.5), therefore also requires that sex offenders receive discretionary parole. Accordingly, we affirm the judgment of the court of appeals reversing the trial courts' denial of the defendants' Crim. P. 35(c) motions for post-conviction relief in each of these four cases.

Justice COATS dissents, and Justice KOURLIS and Justice RICE join in the dissent.

Justice COATS, dissenting:

In these consolidated cases, the majority extends its holding in *Martin v. People*, 27 P.3d 846 (2001), by concluding that a person convicted of a sex offense committed between July 1, 1996 and November 1, 1998 is subject to a period of "discretionary parole" no longer than the remainder of the maximum sentence of incarceration imposed by the court. Because I disagree that the term "maximum sentence" in section 17–2–201(5)(a.5), 6 C.R.S. (2000), is limited to the incarceration component of a sentence, and because I do not believe the legislature intended to retroactively eliminate the five-year mandatory parole requirement of section 18–1–105(1)(a)(V)(C), 6 C.R.S. (2000), for sentences imposed after July 1, 1996, I respectfully dissent.

For the reasons expressed in my dissenting opinion in *Martin*, I believe that when the General Assembly changed the sentencing scheme in 1993 by mandating that felony sentences include a term of parole in addition to a term of incarceration, it lengthened the "maximum sentence" imposed by the court by the amount of that parole term. Although the new mandatory parole provisions, in effect, rendered superfluous the existing limitations on parole for sex offenders found in section 17–2–201(5)(a), they in no way conflicted with them. Section 17–2–201(5)(a) merely barred a parole term greater than five years, which was precisely the term mandated for sex offenders by the 1993 parole scheme, or a parole term, regardless of its absolute length, extending beyond the "maximum sentence" imposed by the court, which (after the 1993 amendments) was the sum of the defendant's term of incarceration and his mandatory parole term. Subsection (5)(a.5) superceded subsection (5)(a) in 1996 but did not change its "maximum sentence" limitation in any way. Therefore, when a defendant's "maximum sentence" is properly understood to include his sentence to a term of incarceration plus his mandatory sentence to an additional term of parole, section 17–2–201(5)(a.5) (for crimes after July 1, 1996) was no more in conflict with the existing mandatory parole provision of section 18–1–105(1)(a)(V)(C), than was subsection (5)(a) (for crimes committed before July 1, 1996).

Whatever various members of the General Assembly may have had in mind, the sentencing scheme that existed both before and after the 1996 amendment was consistent in requiring that the sentences of sex offenders include a five-year parole period, whether or not the offender actually had that amount of time remaining on his sentence to incarceration. However, in 1998, two years after the enactment of section 17–2–201(5)(a.5) and five years after the reintroduction of mandatory parole terms over and above a sentence to incarceration, the legislature again amended the mandatory parole provisions for sex offenses, found in section 18–1–105(1)(a)(V)(C). The lack of understanding or agreement about earlier amendments to sex offender sentencing provisions pales by comparison to the mystery surrounding the intent behind the 1998 amendment. In the first regular session of the sixty-first General Assembly, section 18–1–105(1)(a)(V)(C) was amended in two different bills, without reference to each other, each with slightly different language, different applicability provisions, and different effective dates. *See* ch. 303, sec. 4, § 18–1–105, 1998 Colo. Sess.

Laws 1278, 1289; ch. 139, sec. 6, § 18–1–105, 1998 Colo. Sess. Laws 389, 399.[1]

In the earlier of the two, House Bill 98–1177, the amendment was joined with a number of generally unrelated sexual offense provisions, the most substantial of which expanded the requirements for registration of sex offenders. Although it did not become effective until April 21, 1998, it purported to limit the existing parole provisions of section 18–1–105(1)(a)(V)(C) to crimes committed before July 1996 and to amend the parole provisions for sex offenses committed on or after July 1, 1996. For post–1996 offenses, the amendment replaced the mandatory, five-year period of parole imposed by the court as part of the sentence, with a period of parole to be set by the parole board, within the parameters provided by section 17–2–201(5)(a.5). While this 1998 amendment did nothing to change the plain meaning of the term "maximum sentence," which necessarily includes any additional parole component of a sentence, it arguably eliminated any court-imposed parole component of sex offender sentences to which it applied. Intentionally or not, it in effect removed sex offenders from the mandatory parole scheme and reduced their "maximum sentence" by the amount of the former mandatory parole term.

In the later of the two bills, the amendment to section 18–1–105(1)(a)(V) was one of a number of conforming amendments attached to an entirely new sexual offender sentencing scheme, entitled, "Lifetime Supervision of Sex Offenders." The new sentencing scheme, approved in June 1998, to become effective by its own terms on November 1, 1998, and to apply only to sex offenses committed on or after that date, reinstituted a type of indeterminate sentencing for sex offenders. The new sex offender sentencing scheme required the imposition of a minimum sentence, of at least the minimum of the presumptive range for the defendant's level of offense, and a maximum sentence of the remainder of the sex offender's natural life. The maximum sentence beyond which a sex offender could be subject to parole supervision therefore became the end of the offender's natural life. Although House Bill 98–1156 was approved after House Bill 98–1177, its amendments to section 18–1–105(1)(a)(V) did not acknowledge the previous amendment, and the revisor of statutes merely included both sets of amendments in the revised code.[2]

1. House Bill 98–1177, which became effective on April 21, 1998 and applied to offenses committed on or after that date, amended section 18–1–105 as follows:

(1)(a)(V)(C) Notwithstanding sub-subparagraph (A) of this subparagraph (V), the mandatory period of parole for a person convicted of a felony offense COMMITTED PRIOR TO JULY 1, 1996, pursuant to part 4 of article 3 of this title, or part 3 of article 6 of this title, shall be five years. NOTWITHSTANDING SUB SUBPARAGRAPH (A) OF THIS SUBPARAGRAPH (V), THE PERIOD OF PAROLE FOR A PERSON CONVICTED OF A FELONY OFFENSE COMMITTED ON OR AFTER JULY 1, 1996, PURSUANT TO PART 4 OF ARTICLE 3 OF THIS TITLE, OR PART 3 OF ARTICLE 6 ·OF THIS TITLE, SHALL BE SET BY THE STATE BOARD OF PAROLE PURSUANT TO SECTION 17–2–201(5)(A.5), C.R.S., BUT IN NO EVENT SHALL THE TERM OF PAROLE EXCEED THE MAXIMUM SENTENCE IMPOSED UPON THE INMATE BY THE COURT.

House Bill 98–1156, which became effective November 1, 1998 and applied to offenses committed on or after that date, amended section 18–1–105 in relevant part as follows:

(1)(a)(V)(C) Notwithstanding sub-subparagraph (A) of this subparagraph (V), the manda-

tory period of parole for a person convicted of a felony offense COMMITTED PRIOR TO JULY 1, 1996, pursuant to part 4 of article 3 of this title, or part 3 of article 6 of this title, shall be five years.

(C.3) NOTWITHSTANDING THE PROVISIONS OF SUB–SUBPARAGRAPH (A) OF THIS SUBPARAGRAPH (V), THE PERIOD OF PAROLE FOR A PERSON CONVICTED OF A FELONY OFFENSE, COMMITTED ON OR AFTER JULY 1, 1996, BUT PRIOR TO NOVEMBER 1, 1998, PURSUANT TO PART 4 OF ARTICLE 3 OF THIS TITLE OR PART 3 OF ARTICLE 6 OF THIS TITLE, SHALL BE SET BY THE STATE BOARD OF PAROLE PURSUANT TO SECTION 17–2–201(5)(a.5), C.R.S.

(C.5) NOTWITHSTANDING THE PROVISIONS OF SUB–SUBPARAGRAPH (A) OF THIS SUBPARAGRAPH (V), ANY PERSON SENTENCED FOR A SEX OFFENSE, AS DEFINED IN SECTION 16–13–803(5), C.R.S., COMMITTED ON OR AFTER NOVEMBER 1, 1998, SHALL BE SENTENCED PURSUANT TO THE PROVISIONS OF PART 8 OF ARTICLE 13 OF TITLE 16, C.R.S.

2. See § 18–1–105(1)(a)(V). Section 18–1–105(1)(a)(V) provides in part:

(C) Notwithstanding sub-subparagraph (A) of this subparagraph (V), the mandatory period of

Unless the General Assembly intended to extend the possibility of parole supervision for sex offenses committed on or after November 1, 1998 to the end of the offender's life, and at the same time retroactively bar any parole supervision beyond the offender's sentence to incarceration for offenses committed in the narrow window between July 1, 1996 and November 1, 1998, it is likely that the latter effect was not intended by the 1998 amendment to section 18–1–105(1)(a)(V). In light of the legislature's clear distinction between pre- and post-July 1, 1996 offenses, and its express return to reliance on section 17–2–201(5)(a.5) for post 1996 offenses, it seems more likely that the 1996 amendments to section 18–1–105(1)(a)(V)(C) were understood as increasing the length of possible supervision, and the "maximum sentence" formula was understood to permit an absolute parole term just as long as the offender's term of incarceration rather than to restrict parole supervision to the unserved remainder of the defendant's sentence. As the majority points out, however, such an understanding is simply not consistent with the historical meaning and prior constructions by this court of this very provision. Maj. op. at 355–356.

While the first principle of statutory construction is to effect legislative intent and interpret ambiguous and conflicting provisions to accomplish that end, it is not the role of the courts to rewrite or eliminate clear and unambiguous statutes merely because they do not believe the General Assembly would have intended the consequences of its enactments. Whatever extrinsic aids to construction may indicate about the likely purpose or intent of the General Assembly, the language in which it has expressed itself must be susceptible of an interpretation that implements that intent. Even though the legislature may not have fully understood that section 17–2–201(5)(a.5) limited parole to the *remainder of the defendant's maximum sentence* or appreciated that by removing the five-year mandatory parole sentence of section 18–1–105(1)(a)(V) it was actually shortening a sex offender's "maximum sentence," the terms of its enactment cannot be construed to avoid their inescapable consequences.

It is less clear, however, to which sex offenders these 1998 amendments to section 18–1–105(1)(a)(V) should apply. *See* § 2–4–301, 1 C.R.S. (2000) (if amendments to same statute are enacted at same session of legislature without reference to each other and they conflict, the amendment with the latest effective date should prevail). Because the legislature could not apply its acts in violation of the fundamental law of this state or the United States, its statutes must be applied if possible to avoid such constitutional violations. *See Bd. of Educ. v. Booth*, 984 P.2d 639, 653 (Colo.1999). Although section 18–1–105(1)(a)(V)(C), 6 C.R.S. (2000) (as amended by H.B. 98–1177), is restricted on its face only to offenses committed on or after July 1, 1996, and section 18–1–105(1)(a)(V)(C.3), 6 C.R.S. (2000) (as amended by H.B. 98–1156), is restricted only to offenses committed on or after July 1, 1996 and before November 1, 1998, I do not believe that either could enlarge the five-year term of parole to which a sex offender had already been sentenced without violating constitutional limitations on ex post facto legisla-

parole for a person convicted of a felony offense committed prior to July 1, 1996, pursuant to part 4 of article 3 of this title, or part 3 of article 6 of this title, shall be five years. Notwithstanding sub-subparagraph (A) of this subparagraph (V), the period of parole for a person convicted of a felony offense committed on or after July 1, 1996, pursuant to part 4 of article 3 of this title, or part 3 of article 6 of this title, shall be set by the state board of parole pursuant to section 17–2–201(5)(a.5), C.R.S., but in no event shall the term of parole exceed the maximum sentence imposed upon the inmate by the court.
(C.3) Notwithstanding the provisions of sub-subparagraph (A) of this subparagraph (V), the period of parole for a person convicted of a felony offense committed on or after July 1, 1996, but prior to November 1, 1998, pursuant to part 4 of article 3 of this title, or part 3 of article 6 of this title, shall be set by the state board of parole pursuant to section 17–2–201(5)(a.5), C.R.S.
(C.5) Notwithstanding the provisions of sub-subparagraph (A) of this subparagraph (V), and person sentenced for a sex offense, as defined in section 16–13–803(5), C.R.S., committed on or after November 1, 1998, shall be sentenced pursuant to the provisions of part 8 of article 13 of title 16, C.R.S.

tion. *See Garner v. Jones,* 529 U.S. 244, 250–51, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000) (indicating that retroactive changes in laws governing the parole of prisoners violate the Ex Post Facto Clause when they create a sufficient risk of increasing the measure of punishment attached to the covered crimes); *Gasper v. Gunter,* 851 P.2d 912, 916 (Colo. 1993).

Similarly, the legislature is constitutionally prohibited from shortening or commuting a final sentence in Colorado. *See* Colo. Const. art. IV, § 7; *Mamula v. People,* 847 P.2d 1135, 1137 (Colo.1993) (recognizing the "constitutional principle that only the executive department may modify a legally imposed criminal sentence after the conviction upon which it is based has become final"); *People v. Herrera,* 183 Colo. 155, 162, 516 P.2d 626, 628 (1973) (observing governor's exclusive power to grant reprieves, commutations and pardons after conviction and the inability of the legislature to confer executive powers upon the judiciary); *cf. People v. Macias,* 631 P.2d 584, 586 (Colo.1981) (noting that a defendant is entitled to the benefits of amendatory legislation mitigating criminal penalties only before conviction becomes final); *People v. Thomas,* 185 Colo. 395, 398, 525 P.2d 1136, 1138 (1974) (same). Since section 18–1–105(1)(a)(V)(C) required the imposition of a five-year parole term as a separate and distinct element of a sex offender's sentence until the 1998 amendments limited this requirement to pre–1996 offenses, retroactive application of those amendments to sex offenders who had already been convicted and whose sentences had become final, with the effect of shortening their five-year parole term, would amount to an unconstitutional commutation of a sentence.

I would therefore hold that the 1998 amendments to section 18–1–105(1)(a)(V)(C), and the addition of (C.3), can be applied only to those sex offenders who committed their offenses between July 1, 1996 and November 1, 1998, and to whom application would neither violate ex post facto prohibitions nor amount to commutation of a sentence. Unlike the majority, I would not relieve all sex offenders from 1996 to 1998 of the General Assembly's express, mandatory parole requirements, but would instead require a case by case determination whether retroactive application of section 18–1–105(1)(a)(V)(C) would actually deprive defendants of their constitutional rights or reduce an existing final sentence.

For the reasons expressed above and in my dissent in *Martin,* I believe the holdings of the court of appeals in these consolidated cases were too broad. I therefore respectfully dissent.

Justice KOURLIS and Justice RICE join in the dissent.