2014 COA 24

**DAIMLER CHRYSLER FINANCIAL SERVICES AMERICAS, LLC,**
Plaintiff–Appellant,

v.

**COLORADO DEPARTMENT OF REVENUE,** Defendant–Appellee.

Court of Appeals No. 12CA2559

Colorado Court of Appeals,
Div. V.

Announced March 13, 2014

Lathrop & Gage, LLP, George G. Matava, Donald E. Lake, III, Denver, Colorado; Akerman Senterfitt P.A., Michael Bowen, Jacksonville, Florida, for Plaintiff–Appellant

John W. Suthers, Attorney General, Robert H. Dodd, Jr., Senior Assistant Attorney General, Brendan C. Reese, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee

Opinion by JUDGE NIETO *

¶ 1 Plaintiff, Daimler Chrysler Financial Services Americas, LLC (Daimler), appeals the judgment denying its claim for a tax credit or refund from defendant, Colorado Department of Revenue, under subsection 39–26–102(5), C.R.S.2013. We affirm.

## I. Background

¶ 2 Consumers purchased motor vehicles from several motor vehicle dealers using retail installment contracts secured by liens on the vehicles. At the times of the sales, the dealers assigned all of their rights under the contracts to Daimler, who paid the dealers the entire amounts due on the contracts, including the sales taxes. The dealers then remitted the sales taxes to the Department of Revenue. Daimler asserts that it acted as a "unit" or in a "group" with the dealers in the sale and financing of the vehicles. It does not assert any ownership of or right to control the dealers.

¶ 3 When certain consumers defaulted on their contracts, Daimler repossessed the vehicles securing those purchasers' obligations. Even after repossession and sale of the collateral, unpaid balances remained on some of those contracts. Daimler charged off those debts for federal income tax purposes. After charging off the debts, Daimler sought a bad debt tax credit or refund from the Department of Revenue, and the Department of Revenue denied this claim. Daimler then filed suit in district court, and the district court also denied the claim.

¶ 4 Daimler now appeals.

## II. Analysis

¶ 5 Relying on the definition of "[t]axpayer" in subsections 39–26–102(6) and (17), Daimler contends that (1) the district court

erred in holding that Daimler and the dealers did not constitute a "group or combination acting as a unit" for purposes of Daimler's claim for relief under subsection 39–26–102(5); (2) in the alternative, the district court erred in determining that the dealers could not provide Daimler with valid assignments of their rights to relief under subsection 39–26–102(5); and (3) the district court erred in deciding that the General Assembly's amendments to subsection 39–26–703(2)(b), C.R.S.2013, did not violate due process under the United States and Colorado Constitutions as legislation retrospective in application. U.S. Const. amend XIV; Colo. Const. art II, § 11 ("No ... law ... retrospective in its operation ... shall be passed by the general assembly."). We conclude that Daimler has not shown grounds for reversal.

### A. Standard of Review

¶ 6 Statutory construction is a question of law which we review de novo. *Specialty Rests. Corp. v. Nelson*, 231 P.3d 393, 397 (Colo.2010). The primary objective of statutory construction is to effectuate the General Assembly's intent. *Id.* The legislature is presumed to intend that various parts of a comprehensive scheme are consistent with and apply to each other and must be understood to harmonize the whole. *BP Am. Prod. Co. v. Patterson*, 185 P.3d 811, 813 (Colo.2008). If a statute's language is clear, we interpret the statute according to its plain and ordinary meaning. *Specialty Rests.*, 231 P.3d at 397.

¶ 7 When two statutory provisions conflict, the specific provision prevails over the general provision unless the general provision is the later adoption and the General Assembly manifested clear intent for the general provision to prevail. *People in Interest of W.P.*, 2013 CO 11, ¶ 12, 295 P.3d 514, 519. "Of two conflicting statutes, the one applying narrowly to a particular circumstance is more specific than an enactment providing for a generally applicable regulatory scheme." *Gessler v. Doty*, 2012 COA 4, ¶ 19,

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2013.

272 P.3d 1131, 1134. The specific provision prevails in order to construe the two provisions in harmony without having to discard one. *People v. Cooper*, 27 P.3d 348, 355 (Colo.2001). If general provisions prevailed over specific ones, then specific provisions would cease to function entirely. *Id.* Statutory construction must seek to give full and sensible effect to the entire statutory scheme. *Id.*

### B. Daimler and the Dealers Are Not a "Group" or "Unit" Under Subsection 39–26–102(5)

■ ¶ 8 First, Daimler contends that the district court erred in holding that Daimler and the dealers did not constitute a "group or combination acting as a unit" for purposes of Daimler's claim for a tax credit or refund under subsection 39–26–102(5). We disagree.

■ ¶ 9 As noted above, when portions of a statute conflict, the more specific section controls. *Cooper*, 27 P.3d at 355. Here, subsection 102(5) and subsection 39–26–113(6), C.R.S.2013, conflict. Subsection 102(5) provides for a credit for sales taxes paid on accounts that are subsequently charged off as bad debts without reference to any particular kind of business. Subsection 113(6) also provides for a credit for sales taxes paid on accounts that are subsequently charged off as bad debts, but specifically addresses motor vehicle sales and limits which kind of entity can claim a credit. Thus, subsection 113(6) is the more specific provision, and it prevails.

¶ 10 Located in the statute's "definitions" section, subsection 102(5) broadly defines " '[g]ross taxable sales' " as the term is used in the rest of article 26. In one sentence, the section elaborates on the definition of " '[g]ross taxable sales' " by providing that "[t]axes paid on gross sales represented by accounts found to be worthless and actually charged off for income tax purposes may be credited upon a subsequent payment of the tax provided in this article." Subsection 102(17) defines a " '[t]axpayer' " for the purposes of subsection 102(5) as "any person obligated to account to the executive director of the department of revenue for taxes collected or to be collected under the terms of this article." The definition of a " '[p]erson' " who may qualify as a " '[t]axpayer' " in subsection 102(17) is found in subsection 102(6): "any individual, firm, limited liability company, partnership, joint venture, corporation, estate, or trust or *any group or combination acting as a unit,* and the plural as well as the singular number." (Emphasis added.)

¶ 11 However, if Daimler and the dealers were to act as a "group" or "unit" responsible for taxpaying under subsection 102(5), then they would be acting as seller-financers and subsection 113(6), specifically addressing seller-financers, would also apply. Subsection 113(6) reads:

(a) In a seller-financed sale in which the seller has added the sales tax due on the sale to the financed sales price of the motor or off-highway vehicle and the purchaser has failed to make payments due to the seller, the seller may deduct all portions of the unreceived payments that are attributable to the sales tax due on the sale from the next sales tax return made by the seller under this article. If the amount to be so deducted exceeds the amount of sales tax to be remitted by the seller for the next reporting period, the seller may carry forward the remaining amount of the deduction to future sales tax returns. This subsection (6) does not create a right to a refund or any other payment by the department of revenue to the seller.

(b) For purposes of this subsection (6), "seller-financed sale" means a retail sale of a motor or off-highway vehicle by a seller licensed under article 6 of title 12, C.R.S., *in which the seller, or a wholly-owned affiliate or subsidiary of the seller, collects all or part of the total consideration paid for the vehicle in periodic payments and retains a lien on the vehicle until all payments have been received.* Except as otherwise provided in this paragraph (b), "seller-financed sale" does not include a retail sale of a vehicle in which a person other than the seller provides the consideration for the sale and retains a lien on the vehicle until all payments have been made.

(Emphasis added.)

¶ 12 As pertinent here, subsection 113(6)(b) specifically rules out the possibility

that Daimler and the dealers constitute one seller-financer because Daimler does not claim to be "a wholly-owned affiliate or subsidiary" of the dealers, and Daimler alone provided consideration for the sales and retained liens on the vehicles.

¶ 13 In subsection 113(6), the General Assembly would not have taken pains to distinguish between seller-financers who may receive a tax credit and mere financers, like Daimler, if financers like Daimler could ignore subsection 113(6) and use subsection 102(5) for a tax credit instead. That interpretation would not harmonize the statute and would cause the specific provision, subsection 113(6), to cease to function, contrary to the rules of statutory construction. *See Cooper,* 27 P.3d at 355 (noting that specific and general statutory provisions must be construed to harmonize or the specific provision will cease to function). Viewing this comprehensive statutory scheme as a whole, we conclude that, under the circumstances here, subsection 113(6) controls, and we therefore look solely to that subsection in determining whether Daimler qualifies as a seller-financer. Accordingly, we need not address Daimler's claim that it acted as a "group" or "unit" and thus qualified for a tax refund or credit under subsection 102(5).

¶ 14 Because it is not a retail seller of motor vehicles nor is it a wholly-owned affiliate or subsidiary of such a seller, Daimler undoubtedly does not qualify as a seller-financer under subsection 113(6)(b). Therefore, it cannot claim a tax credit. Moreover, subsection 113(6)(a) states that subsection 113(6) "does not create a right to a refund or any other payment by the department of revenue to the seller," fully barring recovery of tax refunds or other payments for motor vehicle sales. Thus, Daimler also cannot claim a tax refund under subsection 113(6)(a).

### C. The Dealers Have No Rights to Assign to Daimler

■ ¶ 15 Next, Daimler contends that the district court erred in concluding that the dealers could not provide Daimler with valid assignments of any rights to relief under subsection 102(5) even if Daimler could not

originally claim those rights as a taxpayer itself under the statute. We disagree.

¶ 16 Any rights that dealers might assign to Daimler would necessarily also derive from subsection 113(6) and not subsection 102(5) because subsection 113(6) is the specific subsection that addresses the right to sales tax credits when an installment sales contract for a motor vehicle becomes a bad debt. *See id.* at 355. Again, the General Assembly would not have taken pains in subsection 113(6) to award tax credits only to seller-financers of motor vehicles if all other motor vehicle retailers might avail themselves of tax credits provided for elsewhere. In order to determine what rights to tax credits or refunds the dealers might have assigned to Daimler, we therefore look again to subsection 113(6).

¶ 17 Examining that subsection, we find that no dealer here qualifies as a seller-financer who "collects all or part of the total consideration paid for the vehicle in periodic payments and retains a lien on the vehicle until all payments have been received" because Daimler alone provided consideration for the sales, collects from the consumer, and retains liens on the vehicles. § 39–26–113(6)(b). Because the dealers are not seller-financers and have no rights to tax credits, they have no tax credits to assign to Daimler. Also, as noted above, subsection 113(6)(b) does not provide for any tax refund whatsoever (neither, for that matter, does subsection 102(5)). Therefore, the dealers had no rights to refunds which they could assign to Daimler.

### D. Constitutionality of Subsection 39–26–703(2)(b)

■ ¶ 18 Third, Daimler contends that subsection 39–26–703(2)(b) violates the due process clauses of the Fourteenth Amendment to the United States Constitution and Article II, section 11 of the Colorado Constitution in retrospectively denying Daimler a tax refund. A statute is retrospective if it "takes away or impairs vested rights acquired under existing law, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or

considerations already past." *In re Estate of DeWitt*, 54 P.3d 849, 854 (Colo.2002) (internal quotation marks omitted). Because Daimler has no vested right to a tax refund, we need not decide the constitutionality of subsection 703(2)(b).

### III. Conclusion

¶ 19 For the above reasons, the judgment in favor of the Department of Revenue, in which the district court denied Daimler a tax credit or refund, is affirmed.

JUDGE GRAHAM and JUDGE BERNARD concur.